**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CATO INSTITUTE,

      Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGATION
and UNITED STATES DEPARTMENT OF
JUSTICE,

      Defendants.

Civil Action No. 20-3338-JEB

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR
SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT</u>**

Matthew Topic, D.C. Bar No. IL0037
Josh Loevy, D.C. Bar No. IL0105
Merrick Wayne, D.C. Bar No. IL0058
Shelley Geiszler, D.C. Bar No. IL0087
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com

**TABLE OF CONTENTS**

I.   FACTUAL BACKGROUND ................................................................................................2

II.  LEGAL STANDARDS ....................................................................................................3

III. ARGUMENT ....................................................................................................................3

    A.  Defendants' search is inadequate because their declaration does not establish that the CRS indices and manual indices constitute all files likely to contain responsive records ...............................................................................................................4

    B.  Defendants' search is inadequate because Defendants failed to search the eGuardian and Guardian systems in the FBI's Guardian Program ...........................11

    C.  Defendants' search is inadequate because Defendants failed to search email communications of FBI staff in twelve field offices .......................................................15

    D.  Defendants failed to prove they properly withheld database printouts under Exemptions 6 and 7(C) .......................................................................................................18

IV.  CONCLUSION .............................................................................................................23

## TABLE OF AUTHORITIES

*Cases*

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013)..................................................................20

*ACLU v. Dep't of Def.*, 628 F.3d 612 (D.C. Cir. 2011) ....................................................3

*ACLU v. DOJ*, 655 F.3d 1 (D.C. Cir. 2011) ..................................................................20

*Aguiar v. DEA*, 865 F.3d 730 (D.C. Cir. 2017) .........................................................6, 8

*Am. Immigr. Council v. Dep't of Homeland Sec.*, 21 F. Supp. 3d 60 (D.D.C. 2014) ..............4, 5, 6

*Am. Immigr. Council v. ICE*, 464 F. Supp. 3d 228 (D.D.C. 2020)......................................22

*Bartko v. DOJ*, 167 F. Supp. 3d 55 (D.D.C. 2016)...........................................................5

*Boyd v. DOJ*, 475 F.3d 381 (D.C. Cir. 2007) ...............................................................18

*Campbell v. DOJ*, 164 F.3d 20 (D.C. Cir. 1998) ......................................................7, 8, 9

*Coleman v. FBI*, 1991 WL 333709 (D.D.C. Apr. 3, 1991)...............................................22

*Colgan v. DOJ*, 2020 WL 2043828 (D.D.C. Apr. 28, 2020).....................................7, 8, 15

*Cooper v. DOJ*, 2004 WL 895748 (D.C. Cir. Apr. 23, 2004) ...................................11, 18

*Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121 (D.D.C. 2017)..................................17

*Dillon v. DOJ*, 102 F. Supp. 3d 272 (D.D.C. 2015) ........................................................21

*DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989) ..........................................3

*Elkins v. Fed. Aviation Admin.*, 103 F. Supp. 3d 122 (D.D.C. 2015)........................................4, 10

*Evans v. Fed. Bureau of Prisons*, 951 F.3d 578 (D.C. Cir. 2020) .....................................19

*Goldstein v. Off. of Indep. Couns.*, 1999 WL 570862 (D.D.C. July 29, 1999).............................21

*Iturralde v. Comptroller of the Currency*, 315 F.3d 311 (D.C. Cir. 2003)....................................18

*Jefferson v. Bureau of Prisons*, 2006 WL 3208666 (D.D.C. Nov. 7, 2006).............................4, 15

*Jett v. Fed. Bureau of Investigation*, 241 F. Supp. 3d 1 (D.D.C. 2017) ........................................18

*Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 214 F. Supp. 3d 43
(D.D.C. 2016) ................................................................................................................18

*Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108 (D.C. Cir. 2004) ...............................19

*Keys v. DOJ*, 830 F.2d 337 (D.C. Cir. 1987) ..................................................................22

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987) .............................................................19, 21

*Kowalczyk v. DOJ*, 73 F.3d 386 (D.C. Cir. 1996) ...........................................................11

*Maydak v. DOJ*, 362 F. Supp. 2d 316 (D.D.C. 2005) ......................................................11

*Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ...........19

*Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015) .......................................................8, 9, 10

*Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008) ....................................23

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) ..............................................3

*Oglesby v. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ...............................4, 5, 10, 15

*Prop. of the People, Inc. v. DOJ*, 405 F. Supp. 3d 99 (D.D.C. 2019) ......................15, 17

*Pulliam v. EPA*, 292 F. Supp. 3d 255 (D.D.C. 2018) ........................................................8

*Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399 (D.C. Cir. 2017) ......17

*Rosenberg v. Dep't of Immigr. & Customs Enf't*, 959 F. Supp. 2d 61 (D.D.C. 2013) ...11

*Shapiro v. DOJ*, 153 F. Supp. 3d 253 (D.D.C. 2016) ......................................................21

*Shapiro v. DOJ*, 214 F. Supp. 3d 73 (D.D.C. 2016) ........................................................11

*Steinberg v. DOJ*, 23 F.3d 548 (D.C. Cir. 1994) ...............................................................3

*Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56 (D.D.C. 2017) ...................................8

**Statutes**

5 U.S.C. § 552(b) ..............................................................................................................19

5 U.S.C. § 552(b)(7)(C) .....................................................................................................19

*Other Authorities*

US DOJ, *DOJ Guide to the FOIA: Litigation Considerations*, OFFICE OF INFORMATION POLICY GUIDANCE...............................................................................................................3

US DOJ Office of the Inspector General, *The FBI's Terrorist Threat and Suspicious Incident Tracking System (Audit Report 09-02)*, OIG.JUSTICE.GOV (Nov. 2008)................................... 12, 14

On December 11, 2019, Patrick Eddington, a policy analyst for Plaintiff Cato Institute, requested that the FBI search for "any records regarding the Cato Institute" using a short list of precise terms. Mr. Eddington explicitly requested that "the FBI Guardian database, and any related or successor systems," be one of the records systems included in the search. The FBI, however, instead used the provided terms to search only on the indices of its digital Central Records System (CRS) and the digitized paper indices that preceded the electronic CRS. The FBI's index search returned just 166 responsive pages, 88 of which were withheld in their entirety.

Defendants violated FOIA on multiple grounds. Defendants' declaration is too conclusory and internally inconsistent to establish that the FBI searched all files likely to contain responsive materials. This is because the FBI failed to follow clear and certain leads to search systems encompassed by the FBI's Guardian Program and the email communications of FBI staff in twelve field offices. Moreover, 82 of the 88 pages not released by Defendants—allegedly comprising "database printouts containing the names and identifying information of third parties of investigative interest"—were improperly withheld under Exemptions 6 and 7(C) because Defendants' declaration lacks sufficient detail to permit adequate adversary testing of the claimed exemptions.

The Court should grant summary judgment for Plaintiff and deny Defendants' summary judgment motion. The Court should order that Defendant conduct additional searches discussed below and reject Defendants' Exemptions 6 and 7(C) claims over database printouts and order those printouts released. Plaintiff does not challenge Defendants' withholding or redaction of

- 1 -

documents under Exemptions (b)(3) or (b)(7)(E), or under coded categories 1 through 3 of Exemptions 6 and 7(C).  Nor does Plaintiff challenge Defendants' *Glomar* response.

## I.       FACTUAL BACKGROUND

Patrick Eddington provided the FBI with a short list of terms to search for "any records regarding the Cato Institute[.]"  Defs.' SMF (ECF No. 26-4) ¶ 1.  Mr. Eddington identified some specific locations to be included in the FBI's search, including "the FBI Guardian database or any related or successor systems."  *Id*.  The plain text of the request makes clear that it is not limited to investigative records of the sort contained in the CRS.  The FBI has not objected to the scope of the request as not reasonably describing the requested records or otherwise.

Rather than search all the locations identified in Plaintiff's request and locations likely to have email communications, the FBI initially searched only the indices of the electronic CRS. Seidel Decl. ¶¶ 11, 29-31.  Based on leads found in that CRS search, the FBI conducted a search of the digitized manual indices of eleven FBI field offices.  *Id.* ¶ 25, 25 n.7.  Other than these index searches, the FBI did not search any of its local or national records systems, including systems encompassed by the Guardian Program identified in Plaintiff's FOIA request and systems that would contain emails.  *Id.* ¶ 33.

The index search returned 166 pages that were reviewed by the FBI.  Defs.' SMF ¶ 4. Eighty-eight of those pages—more than half—were entirely withheld, while the other 78 pages were released to Plaintiff in full or in part.  *Id*.  Out of the 88 withheld pages, 82 are allegedly "database printouts" withheld under only Exemptions 6 and 7(C) on the basis that they contain

"the names and identifying information of third parties of investigative interest[.]"  Seidel Decl.

Ex. D at 16-17.

## II.        LEGAL STANDARDS

FOIA limits agencies' ability to keep records secret and reflects a policy favoring

disclosure.  *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 754 (1989).  A central

purpose of FOIA is to "check against corruption and to hold the governors accountable to the

governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

The FOIA summary judgment standard is well established.  *Steinberg v. DOJ*, 23 F.3d 548,

551 (D.C. Cir. 1994).  The agency must show, viewing the facts in the light most favorable to the

FOIA requester, that there is no genuine issue of material fact.  *Id*.  Supporting declarations must

be "clear, specific, reasonably detailed" and describe any withheld information "in a factual and

nonconclusory manner," all in the absence of any "evidence of agency bad faith."  US DOJ, *DOJ*

*Guide to the FOIA: Litigation Considerations*, OFFICE OF INFORMATION POLICY GUIDANCE, at 113,

https://www.justice.gov/oip/page/file/1205066/download (last visited July 5, 2022) (citing cases);

*see, e.g.*, *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011).

## III.        ARGUMENT

Summary judgment should be granted for Plaintiff and denied for Defendants because

Defendants failed to prove an adequate search for records and failed to sufficiently describe the

factual predicates for its Exemptions 6 and 7(C) claims.

Defendants improperly limited their search for records regarding Cato Institute to the

indices of their central electronic database and the scanned manual indices[1] of certain FBI field

---

[1] Before the CRS existed in a digital environment, FBIHQ and each of the field offices used their own sets of 3" x 5" paper cards to index investigative topics of interest.  Seidel Decl. ¶ 22.  These cards—referred to as "manual indices"—were later scanned and made electronically searchable.

offices, notwithstanding clear and certain leads to additionally search systems in the FBI's

Guardian Program and email communications of FBI staff in twelve field offices. In violation of

well-settled precedent, Defendants' declaration does not—because it cannot—establish that the

indices searched by the FBI contained the only files likely to contain responsive materials.

In addition, Defendants withheld 82 pages of responsive records under Exemptions 6 and

7(C) without sufficiently describing the allegedly exempt identifying information in each

document or page, thereby denying this Court and Plaintiff the ability to adequately test

Defendants' exemption claims.

> **A.    Defendants' search is inadequate because their declaration does not establish that the CRS indices and manual indices constitute all files likely to contain responsive records.**

To prove an adequate search, an agency's declaration must show "that the search method .

. . was reasonably calculated to uncover all relevant documents." *Oglesby v. Dep't of Army*, 920

F.2d 57, 68 (D.C. Cir. 1990). More specifically, the agency must provide a "reasonably detailed

affidavit . . . averring that ***all*** files likely to contain responsive materials . . . were searched[.]" *Id.*

(emphasis added). "Where the government has not made such an attestation, courts have typically

found that an issue of material fact exists as to the adequacy of its search." *Elkins v. Fed. Aviation

Admin.*, 103 F. Supp. 3d 122, 131 (D.D.C. 2015); *Am. Immigr. Council v. Dep't of Homeland Sec.*,

21 F. Supp. 3d 60, 71 (D.D.C. 2014) (citing cases). "Even if an agency states that it has searched

its central file system, the failure to aver that all files likely to contain responsive records were

searched, precludes the Court from finding that the search was adequate." *Jefferson v. Bureau of

Prisons*, 2006 WL 3208666, at *6 (D.D.C. Nov. 7, 2006). Here, Defendants chose to search the

electronic CRS indices and certain digitized manual indices, but failed to establish that those were

---

*Id.* ¶ 24. Thus, manual indices are simply earlier versions of the same types of indices used in the electronic CRS. *See id.* ¶¶ 14-15, 22; Defs.' Mem. at 3.

the only locations likely to contain responsive records.

Defendants argue that "the FBI reasonably determined that responsive records would be found only in the CRS[,]" Defs.' Mem. at 7, but their declaration falls short of proving that claim. As an initial matter, the declaration describes the electronic CRS and digitized manual indices at length but never explicitly "incant[s] the 'magic words' concerning the adequacy of the search— namely, the assertion that [the agency] searched *all* locations likely to contain responsive documents." *Bartko v. DOJ*, 167 F. Supp. 3d 55, 64 (D.D.C. 2016) (emphasis original).  At best, the declaration provides evidence that Defendants searched the most likely locations for responsive material, the electronic CRS and digitized manual indices, which is insufficient to prove an adequate search for records. *Am. Immigr. Council*, 21 F. Supp. 3d at 71 ("[A] search is inadequate if it includes only those records '*most likely* to contain the information which had been requested' because an 'agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested.'" (quoting *Oglesby*, 920 F.2d at 68) (emphasis original)).

Regarding the CRS, the declaration here simply explains that "the CRS is the FBI system of records where responsive records could reasonably be expected to be found" and "in most cases represent[s] the most reasonable means for the FBI to locate records potentially responsive to FOIPA requests."  Seidel Decl. ¶¶ 11, 20; *see also id.* ¶¶ 29 ("RIDS index search was reasonably calculated to locate records responsive to [Plaintiff's] request"; "the CRS is the principal records system searched by RIDS to locate information responsive to most FOIPA requests"; "the FBI determined the CRS is the FBI system where records responsive to this request would reasonably be found using the index search methodology"), 31 ("Index searches of the CRS are reasonably expected to locate responsive material within the vast CRS").  Regarding the manual indices, the

FBI simply explains that it "determines which field office or legat manual indices to search based on reasonable leads found in the CRS search . . . and based on information gleaned from the request letter[,]" and that, in this case, "the FBI conducted a search of the manual indices of Baltimore, New York, Dallas, Washington DC, Houston, Chicago, Boston, Pittsburgh, Jacksonville, Seattle, and Copenhagen." *Id.* ¶¶ 25, 25 n.7. This hardly proves that the electronic CRS indices and digitized manual indices were the only files likely to contain responsive material. *See also* Sections (III)(B)-(C), *infra* (arguing that systems in the Guardian Program and email communications in twelve field offices likely contain responsive material).

Otherwise, Defendants' declaration offers just one paragraph discussing the possibility of searches in other file locations. That paragraph—rather than establishing that the CRS indices and manual indices comprise all files likely to contain responsive material—provides two conclusory and internally inconsistent assertions about Defendants' failure to search other FBI systems and locations. *See* Seidel Decl. ¶ 33.

First, the paragraph asserts that neither Plaintiff nor the CRS search results provided Defendants with a basis "to reasonably conclude records would reside outside the CRS," *id.*, but this misunderstands Defendants' burden and is internally inconsistent. Defendants' declaration must establish that they searched all files likely to contain responsive records, whether or not Plaintiff or CRS search results provided them with bases to make that assertion. *See Aguiar v. DEA*, 865 F.3d 730, 738 (D.C. Cir. 2017) (it is agency's burden to demonstrate "that it has conducted a search reasonably calculated to uncover all relevant documents"); *Am. Immigr. Council*, 21 F. Supp. 3d at 72 (emphasizing "the necessity that [the agency] aver it searched all files likely to contain relevant documents" notwithstanding that it "may appear a mere technical requirement") (internal quotation marks omitted). Moreover, Defendants contradict earlier

assertions in the declaration: the declaration simultaneously claims that "there is no basis . . . to conclude that a search elsewhere would reasonably be expected to locate responsive material not able to be located via an index search of the CRS" but also that the FBI decided to search manual indices, outside the automated CRS, "based upon the FBI's search results of the CRS[.]" *Id.* ¶¶ 25, 33.   Indeed, this internal inconsistency alone is sufficient to find Defendants' declaration inadequate.  *See Colgan v. DOJ*, 2020 WL 2043828, at \*6 (D.D.C. Apr. 28, 2020) (finding FBI declaration conclusory because of inconsistency where declaration "first states that CRS is the 'only' system where responsive records could be found, and in the next sentence states that it searched other locations").

Second, the paragraph makes the conclusory assertion that searches of other locations— including systems in the FBI's Guardian Program expressly included in Plaintiff's FOIA request— would be "unduly burdensome in nature, duplicative, and unlikely to yield results not found via the CRS index search," Seidel Decl. ¶ 33, but this again misunderstands Defendants' requirements of proof and lacks the required detailed explanations.  Defendants must establish that unsearched files are not likely to contain responsive material, not just that unsearched files are not likely to contain ***unique*** responsive material.  *See Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) (as amended (Mar. 3, 1999)) (ordering FBI to search tickler files in addition to the CRS even though "ticklers are not generally preserved for posterity and also might not contain information distinct from what the FBI already found within the CRS").  Further, the declaration fails to even explain its conclusory determination that searching other locations was not likely to result in unique responsive information, including failing to explain why Defendants "reasonably expect[] Guardian generated reports . . . to be located in the CRS."  Seidel Decl. ¶ 33.  Such a conclusory assertion, lacking support and explanation, is not sufficient to prove an adequate search.  *See*

*Aguiar v. DEA*, 865 F.3d 730, 739 (D.C. Cir. 2017) (finding declaration insufficient because it merely stated that "no other record systems are reasonably likely to contain" responsive materials without explaining why); *Colgan*, 2020 WL 2043828, at *5 ("This conclusory statement that the FBI searched all places likely to have responsive records for all requests cannot support the implication that CRS is the only location in which responsive records are likely to be found."); *Pulliam v. EPA*, 292 F. Supp. 3d 255, 262 (D.D.C. 2018) (finding declaration inadequate because it did not provide rationale for searching certain locations and not others); *Wallick v. Agric. Mktg. Serv.*, 281 F. Supp. 3d 56, 73 (D.D.C. 2017) (holding an agency did not sufficiently show no other locations were likely to have responsive documents where the agency "conclusorily assert[ed]" that the searched places were the only ones likely to have responsive records).

Defendants cite just two cases to support their position that their search was reasonable: *Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015), and *Campbell v. DOJ*, 164 F.3d 20, 27 (D.C. Cir. 1998). Defs.' Mem. at 7-9. Neither is persuasive or analogous.

Defendants cite *Campbell* for the proposition that "[c]ourts have routinely upheld the FBI's search of the CRS in response to a general request for information about a particular subject[,]" Defs.' Mem. at 8, but the *Campbell* court held that the FBI's search was ***inadequate*** precisely because it was limited to the CRS.[2] In *Campbell*, "the FBI limited its search for information . . . to files that it could locate by searching its Central Records System (CRS) index," and declined to search a separate electronic surveillance index ("ELSUR") or "tickler" files. *Campbell*, 164 F.3d

---

[2] Defendants' own arguments also suggest that this alleged proposition of law does not even apply here. The proposition proposed by Defendants is about cases involving a "general request for information about a particular subject[,]" but, earlier in the brief, Defendants describe Plaintiff's request as a "request . . . for specific search terms" "[u]nlike a request for documents reflecting a certain subject matter[.]" Defs.' Mem. at 1.

at 27.[3]  The court ordered the FBI to search both additional locations.  *Id.* at 28.  Regarding the ELSUR database, the court found that the weight of authority "indicate[d] that the FBI must search ELSUR in addition to CRS in response to a general FOIA request for which ELSUR may be relevant."  *Id.*  Regarding the tickler files, the court noted that the files should be searched even though "ticklers are not generally preserved for posterity and also might not contain information distinct from what the FBI already found within the CRS[.]"  *Id.* at 27-28.

Here, as in *Campbell*, Defendants must search systems in the FBI's Guardian Program and FBI email communications in response to Plaintiff's FOIA request because both locations are likely to contain relevant information, even though they might not contain distinct information from the CRS.  *See* Sections (III)(B)-(C), *infra* (establishing likelihood that Guardian Program systems and certain FBI email communications contain responsive information).  Moreover, the FBI's position in *Campbell* was only that "it need not conduct such searches [outside of the CRS] unless expressly asked to do so in a FOIA request."  *Campbell*, 164 F.3d at 27.  Here, Plaintiff requested that Defendants search all records using specific search terms and expressly asked that the search include the Guardian database and any related or successor systems.  Seidel Decl. Ex. A at 2-3.

In *Mobley*, the FBI's declaration, unlike its declaration here, established that the CRS contained the only files likely to contain responsive material.  The *Mobley* court made clear that the FBI's declaration in that case explained "that the specific record systems Mobley asked the FBI to search either are captured by the CRS or are unlikely to contain responsive records[.]"  *Mobley*, 806 F.3d at 581.  Some of the additional locations that Mobley asked the FBI to search—

---

[3] "A 'tickler' is a duplicate file containing copies of documents, usually kept by a supervisor. Such files . . . could contain documents that failed to survive in other filing systems or that include unique annotations."  *Campbell*, 164 F.3d at 27 n.1.

the "I-Drive" and "ticker" files—had been systematically migrated into the CRS and were no longer in use. *Id.* Here, as explained *supra*, the FBI provides only a conclusory and inconsistent declaration that fails to establish that it searched all files likely to contain responsive material. And the additional locations Plaintiff asks to be searched here—including systems in the FBI's Guardian Program and certain FBI email communications—are currently in use and are not systematically incorporated into the CRS. *See* Sections (III)(B)-(C), *infra*. In fact, the *Mobley* court explicitly distinguished searches like Defendants' search here: "Had the FBI only searched the record systems 'most likely' to contain responsive records, its search would be inadequate." *Mobley*, 806 F.3d at 582.[4]

In sum, Defendants' declaration is evasive, conclusory, and internally inconsistent, and it leaves open a critical issue of material fact by permitting inferences that other files likely contain responsive information. Like many declarations found insufficient by D.C. courts, the declaration here fails to establish a material fact necessary to prove an adequate search: that Defendants searched all files likely to contain responsive materials. *See Oglesby*, 920 F.2d at 68 ("It is not clear from State's affidavit that the Central Records system is the only possible place that responsive records are likely to be located. At the very least, State was required to explain in its affidavit that no other record system was likely to produce responsive documents."); *Elkins*, 103 F. Supp. 3d at 131 (upholding "technical requirement" to "aver that all files likely to contain responsive records were searched or that no other offices would likely contain responsive documents" notwithstanding agency's descriptions of "the files and offices it searched, the reasons

---

[4] As later explained *infra*, the instant case is further distinguishable from *Mobley* because Plaintiff offers countervailing evidence of the likelihood that systems in the Guardian Program and certain FBI email communications contain responsive material. *See* Sections (III)(B)-(C), *infra*; *Mobley*, 806 F.3d at 582 (noting that the plaintiff "offered no basis on which this court could conclude the presumption of good faith has been overcome").

- 10 -

those locations were chosen, and how the search was carried out"); *Am. Immigr. Council*, 21 F. Supp. 3d at 72 ("In the absence of an affidavit containing the specific assertion that ICE searched all files likely to contain responsive documents—or, the contrapositive, that the files ICE did not search were not likely to contain responsive documents—the Court cannot conclude that Defendants' search was adequate."); *Shapiro v. DOJ*, 214 F. Supp. 3d 73, 78 (D.D.C. 2016) (finding declaration inadequate because it never averred "that all files likely to contain responsive materials . . . were searched"); *Rosenberg v. Dep't of Immigr. & Customs Enf't*, 959 F. Supp. 2d 61, 72 (D.D.C. 2013) (same); *Maydak v. DOJ*, 362 F. Supp. 2d 316, 326 (D.D.C. 2005) (same).

**B.    Defendants' search is inadequate because Defendants failed to search the eGuardian and Guardian systems in the FBI's Guardian Program.**

When a requester seeks agency records on a given subject, the agency is obliged to pursue any "clear and certain" leads it cannot in good faith ignore. *Cooper v. DOJ*, 2004 WL 895748, at *2 (D.C. Cir. Apr. 23, 2004) (citing *Kowalczyk v. DOJ*, 73 F.3d 386, 389 (D.C. Cir. 1996)). Here, there is considerable evidence that the eGuardian and Guardian systems encompassed by FBI's Guardian Program likely contain information responsive to Plaintiff's FOIA request, and Defendants' search is inadequate for failing to follow the clear and certain leads to search these systems.

The FBI's Guardian Program encompasses multiple digital systems, all managed by the Guardian Management Unit within the FBI's Counterterrorism Division. Ex. A at 27 (Jacqueline F. Brown, *Federal Bureau of Investigation Privacy Impact Assessment for the eGuardian System*, FBI FOIPA Services (Jan. 4, 2013 (updated Jan. 14, 2014)), https://www.fbi.gov/services/information-management/foipa/privacy-impact-assessments/eguardian-threat#ided6d (last visited July 5, 2022)). Two of the systems include: (1) "the classified Guardian Threat Tracking System (Guardian), which resides on the FBI's secret

level system, FBINET"; and (2) "an unclassified companion, eGuardian, which is available and utilized in the daily operations of federal, state, local, tribal and territorial and law enforcement partners" ("FSLTT"). *Id.* Together, all the systems in the Guardian Program constitute "a universal reporting system for all law enforcement" with the primary purpose of "facilitat[ing] the reporting, tracking, management, and sharing of threats to determine whether a particular matter should be closed or opened as a predicated investigation" by the FBI. *Id.* at 27-28. The incidents stored in the system relate to terrorist, cyber, and other criminal threats that the FBI is authorized to investigate. *Id.* at 31.

The eGuardian and Guardian systems contain records created at different stages of assessing threats. First, FSLTT enter a draft of "an occurrence or report of suspicious activity, threat or event relating to terrorism, cyber or criminal activity . . . into eGuardian[.]" *Id.* at 28-29. After the draft is finalized and approved in eGuardian, it is uploaded to Guardian—the FBI's classified system on FBINET—for assessment by an FBI supervisor. *Id.* at 29-30. The FBI supervisor determines whether the reported incident warrants further investigation by the FBI. *Id.* at 4-5, 17, 29-30. If, and only if, the FBI supervisor decides that the incident warrants further investigation is the information in Guardian uploaded into case management systems that are encompassed by the CRS. *Id.*; US DOJ Office of the Inspector General, *The FBI's Terrorist Threat and Suspicious Incident Tracking System (Audit Report 09-02)*, OIG.JUSTICE.GOV (Nov. 2008), https://oig.justice.gov/reports/FBI/a0902/final.pdf (last visited July 5, 2022), at ii n.1.

Defendants had clear and certain leads to search both the eGuardian and Guardian systems. Defendants argue that the leads are "anything but clear and certain" because Plaintiff "simply asked to search certain locations without explaining why[,]" Defs.' Mem. at 9, but that ignores the considerable publicly available information, authored by the FBI, proving the likelihood that the

- 12 -

eGuardian and Guardian systems contain unique responsive material not included in the CRS or manual indices. Considering that evidence, Plaintiff's original request that the FBI's "search . . . include, but not be limited to, the FBI Guardian database or any related or successor systems" provided a clear and certain lead for Defendants to search the eGuardian and Guardian systems. Seidel Decl. Ex. A at 2-3.

As explained *supra*, eGuardian is the system initially used to store all reports of pre-case incidents by FSLTT. Accordingly, eGuardian is "the primary Shared Data Repository . . . for suspicious activity reports[.]" Ex. A at 26. That is, eGuardian houses draft and finalized versions of all FSLTT reports concerning terrorism, cyber, or other criminal activity that FSLTT believes the FBI is authorized to investigate. If such drafts or final versions of records reflect reports of alleged incidents by, or mentioning, the Cato Institute, they are responsive to Plaintiff's FOIA request here. Indeed, it is even more likely that responsive materials exist within eGuardian than within the CRS or manual indices, because eGuardian contains pre-case incident reports by FSLTT, whereas the CRS indices and manual indices reflect only key investigative topics of interest for reports that warranted further investigation by the FBI.

There is also considerable evidence that the Guardian system is likely to contain unique responsive records. Guardian is "[t]he FBI's principal automated system to track terrorist threats and suspicious incidents[.]" US DOJ Office of the Inspector General, *Audit Report 09-02*, *supra*, at i. As explained above, the pre-case incidents uploaded from eGuardian to Guardian concern terrorism, cyber, or other criminal activity that the FBI is authorized to investigate. To the extent any such reports mention the Cato Institute, those reports would be responsive to Plaintiff's FOIA request. Moreover, many of those reports are likely not stored in the CRS or included in manual indices, because reports stored in Guardian are only uploaded into the case management systems

encompassed by the CRS if an FBI supervisor decides that the incident warrants further investigation.[5]  And that is rare: for example, the FBI OIG determined that the FBI initiated only 600 investigations out of approximately 108,000 incidents uploaded to Guardian between July 2004 and November 2007.  *Id.* at ii.  Moreover, many incidents in Guardian do not even have a chance of making it to the FBI's case management systems encompassed by the CRS: the FBI OIG estimated that 12% of incidents reported in Guardian are closed by FBI supervisors without even being reviewed.  *Id.* at vii.

Defendants' declaration does not provide meaningful evidence to the contrary.  As explained in Section (III)(A) *supra*, the declaration offers only a single conclusory assertion about systems in the FBI's Guardian Program.  Without explanation, the declaration concludes: "the FBI reasonably expects Guardian generated reports of investigative interest to the FBI to be located in the CRS."  Seidel Decl. ¶ 33.  This is an insufficient justification for failing to follow the clear and certain lead described above.

Moreover, Defendants' declaration elsewhere suggests that unique responsive information is likely in the eGuardian and Guardian systems.  The declaration admits that FBI investigators are allowed significant individual discretion when deciding whether and how to index information in the CRS: information may be indexed by individual, organization, or event, and "is done at the discretion of FBI investigators when information is deemed of sufficient significance to warrant

---

[5] Conversely, when threat information received by the FBI outside of the Guardian system is so critical that an investigation is immediately opened in the FBI's case management system, FBI guidance requires that a record in Guardian also be created summarizing the nature of the incident. US DOJ Office of the Inspector General, *Audit Report 09-02*, *supra*, at xii.  To wit, records of threats and suspicious incidents related to counterterrorism created in case management systems should always have corresponding records in Guardian, but the same records created in Guardian do not always have corresponding records in case management systems.

- 14 -

indexing for future retrieval." Seidel Decl. ¶ 15. "Accordingly, the FBI does not index every individual name or other subject matter in the general indices." *Id*.

In light of Plaintiff's request that Defendants search systems in the FBI's Guardian Program, and the considerable evidence that eGuardian and Guardian likely contain unique responsive material, this Court should find Defendants' search inadequate for failing to follow the clear and certain lead to search the eGuardian and Guardian systems. *See Oglesby*, 920 F.2d at 68 ("However, the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested."); *Prop. of the People, Inc. v. DOJ*, 405 F. Supp. 3d 99, 121-24 (D.D.C. 2019) (finding FBI failed to demonstrate adequate search where FBI policy manual suggested the Office of General Counsel would have responsive documents, notwithstanding FBI's averments that its search of a different office would have located any records handled by the Office of General Counsel and that its search did not provide any evidence that records existed in the Office of General Counsel); *Colgan*, 2020 WL 2043828, at *7 (finding FBI's searches of CRS and FOIPA Document Processing System (FDPS) inadequate where "the FBI does not explain why it limited its search to CRS and FDPS, especially given [plaintiff's] suggestion that other systems and field offices would likely have responsive records").

**C.     Defendants' search is inadequate because Defendants failed to search email communications of FBI staff in twelve field offices.**

Plaintiff's FOIA request made clear that it sought "any records" (not merely investigative records housed in the CRS) utilizing certain Cato-specific search terms. Seidel Decl. Ex. A at 2; *see Jefferson*, 2006 WL 3208666, at *6 ("The agency has the duty to construe the scope of a FOIA request liberally."). Additionally, Defendants' own declaration and document production provide clear and certain leads to search email communications of FBI staff of the field offices in Baltimore, New York, Dallas, Washington DC, Houston, Chicago, Boston, Pittsburgh,

Jacksonville, Seattle, Copenhagen, and Philadelphia.  Thus, as explained in more detail below, Defendants' search is inadequate for failing to search those email communications.

Defendants' own declaration provides evidence that a search of email communications in those twelve field offices is likely to result in the discovery of records responsive to Plaintiff's FOIA request.  According to the declaration, the FBI searches manual indices of field offices only when it identifies "reasonable leads found in the CRS search[.]"  Seidel Decl. ¶ 25 n.7.  In this case, after searching the CRS indices for Cato-specific terms, the FBI determined that it needed to "conduct[] a search of the manual indices of Baltimore, New York, Dallas, Washington DC, Houston, Chicago, Boston, Pittsburgh, Jacksonville, Seattle, and Copenhagen" "based upon the . . . search results of the CRS[.]"  Id. ¶ 25.  In other words, the FBI determined that files in those field offices constituted reasonable leads that likely contained responsive material.  It logically follows that the email communications of FBI staff in those field offices also constitute reasonable leads that should be searched.

Defendants' document production further establishes that email communications of FBI staff in at least the field offices in New York, Washington DC, Philadelphia, and Houston constitute reasonable leads.  The production includes two communications sent or received by those field offices that suggest their agents were involved in matters concerning the Cato Institute.  First, the pages at Bates Nos. FBI(20-cv-3338)-74 through -77 comprise a 2011 communication drafted and approved by FBI agents in the New York field office, transmitted to the Washington DC office, titled "CATO INSTITUTE[.]"  Ex. B at FBI(20-cv-3338)-74.  In the communication, the drafting agent describes emails received—occasionally copied or forwarded to an FBI agent in the Philadelphia field office—from multiple different email addresses reporting issues the sending individuals believed should be investigated by the FBI.  Id. at -74-75.  Second, Bates Nos. FBI(20-

cv-3338)-81 is a 1999 request from the Houston field office for the social security number, property ownings, financial background, corporate business information, and "any and all background info" of an unnamed individual. The FBI's Information Technology Center in Savannah responded by communicating a summary of results and providing the Houston field office with a database printout. *Id.* at -79-80. Although Defendants' redactions obscure the relationship of the Cato Institute to that communication, the document must somehow concern Cato since it was produced by Defendants in response to Plaintiff's FOIA request.

Neither Defendants' declaration nor their motion provides any suggestion that the FBI email communications in the twelve specified field offices will not contain responsive material. Indeed, Defendants never describe or explain their decision to forgo a search of email communications. In light of Defendants' silence on the issue, and the evidence in Defendants' declaration and document production that email communications of FBI staff in the Baltimore, New York, Dallas, Washington DC, Houston, Chicago, Boston, Pittsburgh, Jacksonville, Seattle, Copenhagen, and Philadelphia field offices likely contain material responsive to Plaintiff's FOIA request, this Court should find Defendants' search inadequate for failing to follow the clear and certain lead to search those email communications. *See Reporters Comm. for Freedom of the Press v. FBI*, 877 F.3d 399, 407 (D.C. Cir. 2017) (holding that leads located in records must be pursued where the record reveals that an agency weighed in on the subject of the FOIA request); *Prop. of the People*, 405 F. Supp. 3d at 122 ("DOJ's position fails, however, because the FBI's declarations do not explain how the individuals in the Washington Field Office who were assigned to investigate Russian counterintelligence operations would not have responsive records in their e-mail accounts."); *see also Ctr. for Biological Diversity v. EPA*, 279 F. Supp. 3d 121, 140-44 (D.D.C. 2017) (finding declaration insufficient where not all relevant custodians were searched

- 17 -

and agency failed to search "instant messages, text messages, or other electronic communications.").

* * * * *

As explained in Sections (III)(A)-(C) *supra*, Defendants' Motion for Summary Judgment should be denied, and Plaintiff's Cross-Motion for Summary Judgment should be granted, because Defendants failed to perform and prove an adequate search in response to Plaintiff's FOIA request. Even if this Court finds that Defendants' declaration establishes an adequate search, Defendants' motion should be denied and Plaintiff's motion should be granted because the leads described in Sections (III)(B)-(C), in light of the declaration's conclusory explanations and internal inconsistencies described in Section (III)(A), provide sufficient contrary evidence to raise substantial doubt concerning the adequacy of the search. *See Cooper*, 2004 WL 895748, at \*1 (requesters "may submit 'countervailing evidence' as to the adequacy of the agency's search, and if there is 'sufficient evidence to raise a substantial doubt' concerning the adequacy of the search, summary judgment is inappropriate") (quoting *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 314 (D.C. Cir. 2003))); *Jett v. Fed. Bureau of Investigation*, 241 F. Supp. 3d 1, 10–11 (D.D.C. 2017) ("These unanswered questions and the inconsistencies in the FBI's statements, not only within this case but also across different cases over the course of years, give rise to the kind of serious misgivings that may evidence agency bad faith and warrant discovery to resolve.").

**D.    Defendants failed to prove they properly withheld database printouts under Exemptions 6 and 7(C).[6]**

Agencies must prove that withheld information is exempt, *Boyd v. DOJ*, 475 F.3d 381, 385 (D.C. Cir. 2007), and all exemptions are narrowly construed, *Judicial Watch, Inc. v. Nat'l Archives*

---

[6] As noted by Defendants, "'the privacy inquiry of Exemptions 6 and 7(C) [are] essentially the same,' although Exemption 7 requires a lower showing to justify withholdings." Defs.' Mem. at

& *Records Admin.*, 214 F. Supp. 3d 43, 51 (D.D.C. 2016), *aff'd* 876 F.3d 346 (D.C. Cir. 2017).

An agency's declaration "must show, with reasonable specificity, why the documents fall within

the exemption." *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 586 (D.C. Cir. 2020) (internal

quotation marks omitted). That is, the declaration must be specific enough to "permit adequate

adversary testing of the agency's claimed right to an exemption" by including "a relatively detailed

justification, specifically identifying the reasons why a particular exemption is relevant and

correlating those claims with the particular part of a withheld document to which they apply."

*King v. DOJ*, 830 F.2d 210, 219 (D.C. Cir. 1987).

Defendants' declaration is too conclusory to permit adequate adversary testing of their

withholding of entire database printouts under Exemptions 6 and 7(C).[7] A proper withholding

here requires Defendants to prove that disclosure of all portions of the database printout "could

reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. §

552(b)(7)(C). If there is "[a]ny reasonably segregable portion" of the printouts, it must be provided

to Plaintiff "after deletion of the portions which are exempt." 5 U.S.C. § 552(b); *see Mead Data

Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (an agency cannot "justify

withholding an entire document simply by showing that it contains some exempt material").

Defendants' declaration does not permit adversary testing of Exemptions 6 or 7(C) over

database printouts because it does not describe the type of identifying information allegedly

---

12 (quoting *Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1125 (D.C. Cir. 2004)). Accordingly, Plaintiff consolidates its arguments concerning Exemptions 6 and 7(C).

[7] Defendants claim Exemptions 6 and 7(C) over four categories of allegedly exempt identifying information. Defs.' Mem. at 12-13. Plaintiff challenges Defendants' withholding of database printouts in their entirety under coded categories (b)(6)-4 and (b)(7)(C)-4. *See* Seidel Decl. Ex. D at 15-17 (Bates Nos. FBI(20-cv-3338)-82-101, -103, and -105-166); Defs.' Mem. at 16. Plaintiff does not challenge the redactions under categories (b)(6)-4 and (b)(7)(C)-4, nor does Plaintiff challenge redactions or withholdings under other categories or exemptions.

disclosed by each respective printout. Although Defendants' declaration provides a non-exhaustive definition of the types of information Defendants consider "identifying," it never establishes which, if any, of those types of information would be disclosed by the database printouts withheld here. Seidel Decl. ¶ 46 n.20 ("Hereafter, identifying information includes, but is not limited to names, telephone numbers, email addresses, dates of birth, social security numbers, residences, professional titles and occupations, and driver's license numbers."); *see* Seidel Decl. Ex. D at 16-17 (coded index failing to describe the types of identifying information contained in each printout). This means that Defendants' declaration also fails to correlate any individual database printout with the types of allegedly identifying information disclosed by that respective printout or page of the printout.

At most, Defendants' declaration suggests that names of third parties of investigative interest are included in the database printouts, but still fails to permit adversary testing of the exemptions claimed over those names. Specifically, Defendants' declaration never addresses whether the names of third parties of investigative interest were previously made public or acknowledged by the FBI. *See* Seidel Decl. ¶¶ 44-47, 55. Plaintiff does not dispute withholding of nonpublic names of third parties of investigative interest. However, Plaintiff would dispute withholding of names where individuals had been previously publicly disclosed or officially acknowledged by the FBI as individuals of investigative interest. Such names are likely not exempt from disclosure. *See ACLU v. CIA*, 710 F.3d 422, 426 (D.C. Cir. 2013) ("[W]hen an agency has officially acknowledged otherwise exempt information through prior disclosure, the agency has waived its right to claim an exemption with respect to that information."); *ACLU v. DOJ*, 655 F.3d 1, 12 (D.C. Cir. 2011) (rejecting exemption where information was "already publicly available and readily accessible"). However, Plaintiff cannot determine whether to

contest Defendants' exemptions on the basis that the FBI previously disclosed or acknowledged the names of individuals of investigative interest because Defendants' declaration never addresses the issue and Plaintiff otherwise lacks the identifying information necessary to search the public domain.  Accordingly, because Defendants' declaration fails to attest whether the withheld names were previously disclosed or acknowledged by the FBI as individuals of investigative interest, Defendants have not provided Plaintiff with "a meaningful opportunity to contest, [or] the district court an adequate foundation to review, the soundness of the withholding."  *King*, 830 F.2d at 218; *see Shapiro v. DOJ*, 153 F. Supp. 3d 253, 292 (D.D.C. 2016) ("To whatever extent the first [] declaration was ambiguous regarding the names that the FBI withheld, the second [] declaration eliminates the ambiguity" because "it clarifies that the names the FBI protected have not been previously officially disclosed by the FBI as individuals of investigative interest." (internal quotation marks omitted)); *see also Goldstein v. Off. of Indep. Couns.*, 1999 WL 570862, at *4 (D.D.C. July 29, 1999) (ordering the FBI to: compare allegedly exempt documents with documents publicly disclosed in another case; provide plaintiff with any documents that had been previously disclosed in that case; and certify under oath that it had done so).

Defendants' brief offers no further clarification on the types of withheld identifying information.  Instead, Defendants simply point to one case, *Dillon v. DOJ*, 102 F. Supp. 3d 272 (D.D.C. 2015), Defs.' Mem. at 16, but *Dillon* is not relevant to the deficiencies in Defendants' declaration here.  At issue in *Dillon* were two FOIA requests: regarding the first request, the plaintiff never challenged the FBI's proof of Exemption 7(C), 102 F. Supp. 3d at 296; regarding the second, the court never considered plaintiff's challenge to Exemption 7(C) because it first found that Exemption 7(A) was properly asserted over all withheld information, *id.* at 296 n.9.  In relevant part, *Dillon* simply stands for the proposition that disclosure of identifying information of

third parties of investigative interest could reasonably be expected to constitute an unwarranted invasion of personal privacy.  *Id.* at 296.  Plaintiff does not dispute that general proposition. Instead, Plaintiff challenges the sufficiency of Defendants' proof that the withheld database printouts contain exclusively information that is indeed identifying and pertains to individuals investigated by the FBI.

In sum, without understanding the types of identifying information contained in each database printout, neither Plaintiff nor the Court can assess whether it was proper to withhold the printouts in their entirety, whether certain identifying information should have been segregated and released with redactions, or whether information should have been withheld at all.  *See, e.g.*, *Am. Immigr. Council v. ICE*, 464 F. Supp. 3d 228, 239 (D.D.C. 2020) (ordering defendant to produce birth month and year of ICE detainees because there was no evidence that "birth dates, without more, would identify the individuals involved or give rise to any of those concerns given the lack of other data, in particular, the individuals' names, on the same spreadsheets").  For this reason, Defendants' declaration fails to provide sufficient detail to permit adequate adversary testing of the database printouts withheld under Exemptions 6 and 7(C), and this Court should order those printouts to be produced with redactions for any nonpublic names of third-party individuals of investigative interest.  *See Keys v. DOJ*, 830 F.2d 337, 349–50 (D.C. Cir. 1987) ("each deletion" must be "correlated specifically and unambiguously to the corresponding exemption"); *Coleman v. FBI*, 1991 WL 333709, at *4 (D.D.C. Apr. 3, 1991) (rejecting affidavit where pages withheld in full were simply cross-referenced with Exemption 7(C) subcategories);

*see also Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) ("[I]f no significant privacy interest is implicated . . . FOIA demands disclosure.").

## IV.    CONCLUSION

Defendants have not met their burden of proof here.  Defendants failed to perform and prove an adequate search for records responsive to Plaintiff's FOIA request, and withheld documents in their entirety without describing the allegedly exempt identifying information therein.  For the foregoing reasons, this Court should grant Plaintiff's Cross-Motion for Summary Judgment, deny Defendants' Motion for Summary Judgment, and: (1) order searches of the eGuardian and Guardian systems in the FBI's Guardian Program; (2) order searches of email communications of FBI staff in the field offices in Baltimore, New York, Dallas, Washington DC, Houston, Chicago, Boston, Pittsburgh, Jacksonville, Seattle, Copenhagen, and Philadelphia; and (3) order Defendants to produce withheld database printouts with redactions for nonpublic names of third party individuals of investigative interest.

Dated:  July 8, 2022

RESPECTFULLY SUBMITTED,

/s/ *Matthew V. Topic*

_____

Attorneys for Plaintiff

Matthew Topic, D.C. Bar No. IL0037
Josh Loevy, D.C. Bar No. IL0105
Merrick Wayne, D.C. Bar No. IL0058
Shelley Geiszler, D.C. Bar No. IL0087
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900
foia@loevy.com

- 23 -