**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATO INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al*.,<br><br>Defendant. | Case No. 20-cv-3338 (JEB) |

# MOTION FOR RELIEF FROM JUDGMENT

Plaintiff Cato Institute respectfully moves for relief from judgment under Federal Rule of Civil Procedure 60(b)(2) and, in the alternative, Rule 60(b)(3).[1]

## I. INTRODUCTION

Last November the Court entered summary judgment for the FBI on the adequacy of its FOIA search. It relied entirely on two declarations by Michael G. Seidel, Section Chief of the FBI's Record/Information Dissemination Section. In those declarations, Mr. Seidel averred that the agency's index search of the FBI's Central Records System ("CRS") was reasonably calculated to locate all responsive records. But Mr. Seidel's statements are directly contradicted by a sworn declaration by his predecessor, David M. Hardy, the relevant parts of which were first cited in a judicial decision in August 2023. In his declaration, Mr. Hardy explained that CRS index searches are unlikely to locate non-investigative records. And non-investigative records, it is undisputed,

[1] Counsel conferred in advance of this motion pursuant to Local Civil Rule 7(m). Counsel for Defendants indicated that Defendants oppose the motion and reserve the right to respond.

are responsive to Cato's request. So according to Mr. Hardy's sworn declaration, the FBI's CRS-only search was plainly inadequate.

With the benefit of the Hardy Declaration, the Court almost certainly would have denied the FBI's summary judgment motion. After all, a rational factfinder who credited Mr. Hardy—whose declaration is entitled to a presumption of good faith—could conclude that the FBI's CRS index search was not reasonably calculated to locate the non-investigative records responsive to Cato's request. More, in exchange for its immunity from discovery in this FOIA case, the FBI had a duty to either produce the Hardy Declaration or otherwise account for it. It did neither. The Court should therefore grant Cato relief from judgment, deny summary judgment to the FBI, and order further proceedings to resolve the factual dispute about the adequacy of the FBI's search.[2]

## II. BACKGROUND

### A. This Court grants summary judgment to the FBI based on Mr. Seidel's testimony that a CRS search would locate all records responsive to Cato's request, including non-investigative records.

Cato filed a FOIA request seeking "any records regarding the Cato Institute" and suggested that the agency search certain field offices. Mem. Op. at 1-2, ECF No. 34. Cato's request was not limited to records of FBI investigations. This is apparent from the plain language of the request, the search terms Cato suggested (e.g., "Cato Institute"), and a statement in the request that, "[a]s to any records located in investigative files for investigations, the FBI may not assert Exemption 7(A) without conducting a document-by-document review," which implies that some responsive

[2] This case is currently on appeal in the D.C. Circuit. Cato has argued in that appeal that Cato, not the FBI, was entitled to summary judgment on the adequacy of search because the Seidel declarations do not suffice to meet the agency's burden. Nothing in this motion should be construed to cast doubt on or waive that argument. But because this Court has already decided that the Seidel declarations are sufficient on their own to meet the FBI's burden, Cato limits its argument in this motion to whether the Hardy Declaration creates a dispute of fact requiring denial of both parties' summary judgment motions.

records might not be located in investigative files. First Seidel Decl. Ex. A, ECF No. 26-2. The FBI has never disputed that non-investigative records are responsive to Cato's request.

The FBI searched only CRS. Mem. Op. at 2. It did so by conducting an "index search." First Seidel Decl. ¶ 29, ECF No. 26-1. Specifically, the FBI searched two types of indices: main and reference. According to Mr. Seidel, "[a] main index entry is a [*sic*] created for each individual or non-individual (e.g., organization, event, or activity) that is the subject or focus of an investigation," while "[a] reference index entry is created for individuals or nonindividuals (e.g., organization, event, or activity) associated with an investigation, but who or which are not the main subject or focus of the investigation." *Id.* ¶ 14. Thus, the index search was designed to locate investigative records.

The agency's CRS index search proceeded in two stages. First, it conducted an electronic search of parts of CRS through a web-based interface called "Sentinel." *Id.* ¶¶ 18-21 (describing Sentinel); *id.* ¶ 32 (explaining that FBI searched Sentinel in response to Cato's request). Second, it searched manual CRS indices at certain field offices, apparently because those indices had not been automated, and thus a Sentinel search would not locate them. *Id.* ¶ 23 (explaining that some field office indices are not automated); *id.* ¶ 32 (explaining that FBI searched manual indices in response to Cato's request). The agency chose twelve specific field offices based on leads discovered in its automated search results. *Id.* ¶ 25 & n.7. The FBI did not, however, search any part of those field offices outside the documents indexed to CRS. *See* Second Seidel Decl. ¶¶ 4-5, ECF No. 31-1.

The parties cross-moved for summary judgment. Cato argued that, in addition to CRS, the FBI should have searched emails in twelve field offices where the CRS search indicated that responsive records might be located, and where the FBI had already chosen to search its manual

CRS indices. *See* Plaintiff's Opening Summary Judgment Brief at 15-18, ECF No. 27-1. Cato also argued that a non-CRS email search was necessary because the agency could possess responsive emails that were not indexed in CRS because they lacked investigative value. Plaintiff's Reply Brief at 4, ECF No. 32.

The Court granted the FBI's motion and denied Cato's on November 2, 2022,[3] relying on Mr. Seidel's declarations. In particular, it cited Mr. Seidel's averment that "information about the requesting organization, the Cato Institute, 'would reasonably be expected to be in the CRS,' which houses 'information about individuals, organizations, and other subjects of investigative interest for future retrieval.'" Mem. Op at 6 (quoting Second Seidel Decl. ¶ 5). The Court also relied on Mr. Seidel's declarations to hold that "any searches beyond CRS would be duplicative and that the FBI has therefore conducted an adequate search using CRS alone." *Id*. at 7.

Cato timely appealed. *See* Notice of Appeal, ECF No. 36. That appeal is pending, with oral argument scheduled for October 25, 2023.[4]

**B. Cato discovers new evidence—an FBI declaration in a different case—stating that CRS searches are not reasonably calculated to locate non-investigative records.**

On August 18, 2023, the D.C. Circuit decided *Watkins Law & Advocacy, PLLC v. DOJ*, 78 F.4th 436 (D.C. Cir. 2023), which also involved a challenge to the adequacy of an FBI FOIA search. As here, the *Watkins* request sought "documents not specifically tied to an FBI

---

[3] The parties disputed both the adequacy of the FBI's search and the application of FOIA Exemptions 6 and 7(C). Cato does not seek relief from the Court's judgment on the exemptions. In addition, this motion does not seek relief from the Court's judgment that the FBI should have searched its Guardian database.

[4] The pendency of the appeal has no effect on this Court's jurisdiction to hear this motion. *See Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991) ("[W]hen both a Rule 60(b) motion and an appeal are pending simultaneously, appellate review may continue uninterrupted. At the same time, the District Court may consider the 60(b) motion and, if the District Court indicates that it will grant relief, the appellant may move the appellate court for a remand in order that relief may be granted.").

investigation." *Id*. at 443. But unlike here, that fact caused the FBI to "th[ink] it unlikely that a search of the Central Records System would identify responsive documents" and search other locations. *Id*. In support of that proposition, the court cited the Hardy Declaration. *See id*. In that declaration, executed on December 10, 2018, Mr. Hardy says:

> It is the FBI's practice to search the Central Records System ("CRS") to determine if the FBI has records about a particular subject in response to most FOIPA requests. However, in this particular case, Plaintiff requested memorandums, policies, and other communication-related documents not specifically tied to an FBI investigation. Therefore, a search of the CRS is not likely to identify all the responsive records.

Match Decl. Ex. 1 ¶ 31. Though the underlying District Court decision also cites the Hardy Declaration, it says nothing about the FBI's belief that a CRS search would not locate responsive records, or indeed anything about CRS at all. *See generally*, *Watkins L. & Advoc., PLLC v. United States Dep't of Veterans Affs*., 412 F. Supp. 3d 98 (D.D.C. 2019), aff'd in part, vacated in part, remanded sub nom. *Watkins L. & Advoc., PLLC v. DOJ*, 78 F.4th 436 (D.C. Cir. 2023). Neither Cato's requester, Patrick Eddington, nor its counsel were aware of the Hardy Declaration before reviewing the D.C. Circuit's *Watkins* decision. Eddington Decl. ¶ 4; Topic Decl. ¶ 4; Match Decl. ¶ 5. The FBI did not produce or reference it in this litigation. Neither did it reference the material facts it contains.

Promptly after discovering the D.C. Circuit's *Watkins* decision, on August 30, 2023, undersigned counsel emailed the FBI's appellate counsel to ask whether *Watkins* changed the agency's position on appeal. Match Decl. ¶ 6. The FBI's appellate counsel responded on September 14, 2023 that it did not. *Id*. ¶ 7.

## III. ARGUMENT

### A. This motion is timely.

Motions under Rule 60(b)(2) and 60(b)(3) must be timely. That means that they must be "made within a reasonable time," and no more than one year after entry of judgment. Fed. R. Civ. P. 60(c)(1).

This motion is timely. It is filed less than one year after the Court's November 2, 2022 entry of judgment. *See* Order (Nov. 2, 2022), ECF No. 33 (entering summary judgment for FBI). And Cato's counsel have been nothing but prompt in responding to the *Watkins* decision. Less than two weeks after the D.C. Circuit released it (which counsel were not immediately aware of), undersigned counsel approached the FBI in an effort to resolve the issue without the need for judicial intervention. This motion is filed approximately one month after those discussions concluded. Match Decl. ¶¶ 6-7.

### B. The Hardy Declaration, of which Cato was justifiably ignorant, creates a dispute of material fact as to whether the FBI's CRS search was reasonably calculated to locate the responsive non-investigative records.

Rule 60(b)(2) authorizes the court to provide relief from judgment on grounds of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial." Fed. R. Civ. P. 60(b)(2). The decision is discretionary. *Bain v. MJJ Prods., Inc.*, 751 F.3d 642, 646 (D.C. Cir. 2014). When exercising their discretion, courts consider four factors, and in particular whether:

> (1) the newly discovered evidence is of facts that existed at the time of trial or other dispositive proceeding; (2) the party seeking relief was justifiably ignorant of the evidence despite due diligence; (3) the evidence is admissible and is of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching.

*James Madison Project v. DOJ*, 320 F. Supp. 3d 143, 148 (D.D.C. 2018). *See also In re Korean Air Lines Disaster of Sept. 1, 1983*, 156 F.R.D. 18, 22 (D.D.C. 1994), aff'd, 52 F.3d 1122 (D.C. Cir. 1995).

Each factor is satisfied here. The first and fourth are easily disposed of. The Hardy Declaration was executed and filed on December 10, 2018, and hence "existed at the time" of summary judgment proceedings—satisfying the first factor. *James Madison Project*, 320 F. Supp. 3d at 148; Match Decl. Ex. 1. Further, the Hardy Declaration is substantive evidence of the inadequacy of the FBI's search, not merely "impeaching" evidence, and is not "cumulative" of any other evidence in the records because neither Seidel declaration says that an index search of CRS would not likely locate non-investigative records—satisfying the fourth factor. *James Madison Project*, 320 F. Supp. 3d at 148.

As to the second, "due diligence" factor, Cato was justifiably ignorant of the Hardy Declaration. As is apparent from Cato's summary judgment briefing, it searched for and located many cases where courts addressed the adequacy of FBI CRS searches. *See* Plaintiff's Opening Summary Judgment Br. at 7-8. But because the District Court's *Watkins* decision does not reference CRS, setting out to find the Hardy Declaration would have been like searching the proverbial haystack for a needle that might or might not exist. *See generally Watkins*, 412 F. Supp. 3d 98.

While Cato theoretically could have found the Hardy Declaration, doing so would have required spending countless hours that the FBI no doubt would have objected to as unreasonable in any eventual fee petition. Due diligence does not require such unreasonable efforts; it is "circumscribed by a rule of reason." *United States v. Walus*, 616 F.2d 283, 304 (7th Cir. 1980). And as with FOIA's search standards, which the FBI invokes, due diligence should require

"'reasonableness,' not perfection." Defendants' Statement of Points and Authorities in Support of Their Motion for Summary Judgment at 7, ECF No. 26-3 (cleaned up). *See also DiBacco v. U.S. Dep't of the Army*, 795 F.3d 178, 191 (D.C. Cir. 2015) (holding that "adequacy—not perfection—is the standard that FOIA sets").

As to the third factor, which concerns admissibility and importance, the evidence is admissible as a statement by a party opponent, *see* Fed. R. Evid. 801(d)(2)(D), and probably would have changed the outcome. To obtain summary judgment, the FBI was required to "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir.1990)). That means that the agency was not allowed to "limit its search to only one record system if there are others that are likely to turn up the information requested." *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). And the Court was required to deny the FBI's motion "if any reasonable view of the record would permit resolution of a factual dispute in favor of [Cato], and that fact is material to the outcome." *Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020).

Armed with the Hardy Declaration, the Court almost certainly would have denied summary judgment to the FBI. It is undisputed that Cato sought records not specifically tied to an investigation. *See* Section II.A, *supra*. And the Hardy Declaration states unambiguously that CRS searches are not likely to locate non-investigative records—presumably because, as Mr. Seidel also explained, agents index records in CRS only for their investigative significance. *See* Match Decl. Ex. 1 ¶ 31. *See also* First Seidel Decl. ¶ 14 ("The general indices … comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of

investigative interest."). So the Hardy Declaration would have created a dispute of material fact as to whether the FBI's CRS search was reasonably calculated to locate responsive non-investigative records, and thus whether any further non-CRS email search would be "duplicative," as the Court held without the benefit of that evidence. Mem. Op. at 7.

Further, the Hardy Declaration is on all fours with this case. When Cato raised this issue on appeal, the agency sought to distinguish it in by noting that it discussed "a narrow request for policy-related records regarding a particular FBI-administered program." Match Decl. Ex. 2 at 2. But that ignores the import of that declaration: that a CRS search would be inadequate not because it sought policy-related documents, but because those documents were "not specifically tied to an FBI investigation." Match Decl. Ex. 1 ¶ 31. And in any event, as this Court has noted, Cato is a "non-profit public-policy research organization," Mem. Op. at 1, so it could well be referenced in the same type of non-investigative policy documents Mr. Hardy discusses. Thus, even if the ***only*** non-investigative records that would not turn up as a result of a CRS search were "policy-related records regarding a particular FBI-administered program," which is not a fair read of the Hardy Declaration, any such records referencing Cato would have been responsive, yet were not reflected in the FBI's search here.

The Court should grant Cato relief from judgment on grounds of newly discovered evidence.

### C. In the alternative, the Court should grant relief from judgment under Rule 60(b)(3).

Cato is also entitled to relief from judgment because the FBI's withholding the Hardy Declaration constitutes "misconduct" under Rule 60(b)(3). For avoidance of doubt, Cato does not assert that any individual FBI official or its counsel acted with a dishonest purpose. But that is not

required for relief from judgment under Rule 60(b)(3). Inadvertent failures to produce relevant documents can satisfy the rule, and that is all Cato asserts occurred here.

Rule 60(b)(3), authorizes relief from judgment for "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). This requires a two-part showing by clear and convincing evidence: "(1) that the other party engaged in fraud, misrepresentation, or misconduct; and (2) that this misconduct prevented the moving party from fully and fairly presenting his case." *Almerfedi v. Obama*, 904 F. Supp. 2d 1, 5 (D.D.C. 2012). The latter showing requires "actual prejudice" to the movant. *Summers v. Howard Univ*., 374 F.3d 1188, 1193 (D.C. Cir. 2004). Cato relies only on the "misconduct" prong.

Misconduct is distinct from fraud and misrepresentation. It does not require "proof of 'nefarious intent or purpose.'" *Almerfedi*, 904 F. Supp. 2d at 5 (quoting *Anderson v. Cryovac, Inc*., 862 F.2d 910, 923 (1st Cir. 1988)). Misconduct can be accidental, and omissions can suffice. *Anderson*, 862 F.2d at 923. *See also Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc*., 818 F.3d 1320, 1328 (Fed. Cir. 2016). Cato is not asserting that the FBI's conduct here was anything other than accidental.

Most relevant here, misconduct includes discovery violations. For instance, in *Summers* the D.C. Circuit held that plaintiffs committed misconduct by failing to supplement interrogatories asking about claims plaintiffs had filed, where the plaintiffs had filed claims against the defendant but not served the defendant with process and taken other steps to conceal the litigation. *See Summers*, 374 F.3d at 1191, 1193. *See also, e.g.*, *Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir. 1994) (finding misconduct and reversing denial of new trial motion where non-moving party inadvertently failed to produce a report in its possession that was "obviously pertinent" and would have helped moving party "bolster its defense").

Both Rule 60(b)(3) factors are satisfied. First, the FBI should have accounted for the Hardy Declaration—a declaration filed in a case it was litigating at the same time as this one.[5] Its failure to produce that declaration, or at least supply the relevant and material facts it contains, is analogous to a discovery violation. True, it is not strictly a discovery violation, because Cato was not entitled to discovery. *See Bonfilio v. Occupational Safety & Health Admin.*, 320 F. Supp. 3d 152, 157 (D.D.C. 2018). But Cato was not entitled to discovery precisely because courts presume that agencies will disclose the facts necessary to decide the case. As this Court has recognized, "'[t]he peculiarities inherent in FOIA litigation, with the responding agencies often in sole possession of requested records and with information searches conducted only by agency personnel, have led federal courts to rely on government affidavits to determine whether' the agency has met its FOIA obligations." *Am. Ctr. for L. & Just. v. Dep't of State*, 289 F. Supp. 3d 81, 92 (D.D.C. 2018) (Boasberg, J.) (quoting *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)). *See also Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face."). If agencies are generally immune from discovery, they should be—and are, through the presumption of good faith—expected to account for the key evidence in their possession necessary to decide the case, including key evidence that is inconvenient to them. To hold otherwise would be to tilt the scales of justice in favor of the agency.

The FBI could have accounted for the Hardy Declaration in one of two ways. It could have produced it (or the relevant and material information in it) to Cato and conducted summary

[5] The FBI filed its appellate brief on July 15, 2022, in between its two briefs in this case. *See generally* Brief for Appellees, *Watkins L. & Adov., PLLC v. DOJ*, No. 21-5108 (D.C. Cir. July 15, 2022).

judgment proceedings on a level playing field. Or it could have recognized that the information in its sole possession creates a dispute of material fact and simply not moved for summary judgment. But the FBI's moving for summary judgment without disclosing the Hardy Declaration led to an informational asymmetry on an issue at the heart of this case, which Cato was legally unable to correct. Like an inadvertent discovery violation, this warrants relief from judgment.

Second, Cato was prejudiced by the FBI's failure to disclose the Hardy Declaration. This follows for the reasons given above: Cato would have cited that declaration in opposing the FBI's summary judgment motion, which almost certainly would have led the Court to deny it.

## IV. CONCLUSION

The Court should grant Cato relief from judgment, rescind and deny summary judgment to the FBI, and order further proceedings to determine the adequacy of the FBI's index search of CRS.

Dated: October 19, 2023

Respectfully submitted,

*/s/ Stephen Stich Match*

Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Tel. (520) 488-0486
foia@loevy.com

*Attorneys for Plaintiff*