**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CATO INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, *et al*.,<br><br>Defendant. | Case No. 20-cv-3338 (JEB) |

# PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM JUDGMENT

## I. INTRODUCTION

The FBI opposes Cato's motion for relief from judgment primarily on the ground that reasonable diligence supposedly requires parties to read everything on PACER. That argument is absurd. If adopted, it would impose massive and unreasonable costs on litigants. And in some cases—like this one—those costs would ultimately be borne by taxpayers footing the bill for FOIA attorneys' fees. After all, if reasonable diligence requires reading everything on PACER, how could that not be reasonably compensable? In fact, though, there is no rule that reasonable diligence requires reviewing all public records in the off-chance that doing so might bear some fruit. In the circumstances of this case, Cato's diligence on summary judgment was reasonable even though it did not then locate the Hardy Declaration. Tellingly, the FBI does not identify anything Cato could have done to find it apart from reading everything on PACER.

The FBI is also wrong about the relevance of the Hardy Declaration. The Hardy Declaration explicitly says that the FBI declined to search CRS because the request sought "documents not specifically tied to an investigation." Match Decl. Ex. 1 ¶ 31, ECF No. 40-1.

Cato's did too. The FBI points out that the Hardy Declaration discussed a request that sought memos and communication documents. Again, Cato's did too. The Hardy Declaration bears directly on this case and would have led the Court to deny the FBI's summary judgment motion. Thus, Cato is entitled to relief from judgment under Rule 60(b)(2).

The FBI makes essentially the same rejoinders under Rule 60(b)(3) and is wrong for essentially the same reasons. Plus, it offers no meaningful response to Cato's argument that, in exchange for immunity from discovery in FOIA litigation, justice and good faith require agencies to provide the Court with ***all*** relevant evidence necessary to decide the case, not just the evidence that favors the agency. Here, that means the Hardy Declaration. The Court should grant Cato relief from judgment.[1]

## II. ARGUMENT

### A. Cato is entitled to relief from judgment under Rule 60(b)(2).

The FBI does not dispute that this motion is timely, that the newly discovered facts existed at the time of the court's summary judgment decision, that the Hardy Declaration is admissible, and that it would not be merely cumulative or impeaching. *See* Fed. R. Civ. P. 60(c)(1); *James Madison Project v. DOJ*, 320 F. Supp. 3d 143, 148 (D.D.C. 2018). It argues only that Cato did not exercise due diligence in failing to discover the Hardy Declaration and that that declaration would not have impacted the Court's summary judgment decision. It is wrong on both counts.

#### 1. Cato exercised reasonable diligence even though it did not read everything on PACER.

Cato argued that it could not have located the Hardy Declaration through reasonable diligence. It proposed that reasonable diligence involved searching for decisions that reference

[1] Cato agrees with the FBI that, if the Court is inclined to grant the motion while Cato's appeal is still pending, the Court may not grant the motion but should instead indicate that it would grant it, in which case Cato could move for a remand. *See* D. MRJ Opp. at 4.

CRS. It indicated that its counsel in fact conducted that search, observing that its summary judgment briefs cite several such decisions. But because the District Court's *Watkins* decision does not contain the terms "CRS" or "Central Records System," Cato's Westlaw search did not locate *Watkins*, and Cato was therefore justifiably ignorant of the Hardy Declaration filed in it until the D.C. Circuit's decision this past August, which references CRS. *See* Plaintiff's Motion for Relief from Judgment, 7-8 (Oct. 19, 2023), ECF No. 40 ("P. MRJ").

The FBI does not propose an alternative search that would have located the Hardy Declaration. It instead argues that, as a categorical matter, a party fails to exercise reasonable diligence if the evidence is "publicly available on court dockets." Defendants' Opposition to Plaintiff's Motion for Relief from Judgment, 5 (Nov. 2, 2023), ECF No. 41 ("D. MRJ Opp.").

That argument is absurd. The diligence Rule 60(b)(2) requires is "circumscribed by a rule of reason." *United States v. Walus*, 616 F.2d 283, 304 (7th Cir. 1980). The FBI does not try to explain how it could be reasonable to require every litigant to read everything on PACER. Such a construction of Rule 60(b)(2) is at odds with Rule 1's mandate that courts construe the rules "to secure the just, speedy, ***and inexpensive*** determination of every action and proceeding." Fed. R. Civ. P. 1 (emphasis added). Having to read everything on PACER would impose exorbitant costs in every case.

Take this one. Before it saw the D.C. Circuit's *Watkins* decision, Cato had no reason to believe that any FBI declarations in any case would contradict those the agency filed in this one, even after the legal research it conducted on cases involving CRS. It also had no reason to search the *Watkins* docket in particular, as the FBI never identified the case even though it contains a declaration that flatly contradicts the agency's position. *See* Section II.A.2, *infra*. So the FBI's argument implies that "reasonable diligence" required Cato to preemptively review PACER for

any evidence that might bear on the case, on every case's docket. Because PACER lacks any text searching capabilities, that review would have to be manual: Cato would have had to find every docket, look through all the entries, download any potentially relevant filings, and read them all. Even limiting that research to FOIA cases in which the FBI is a party—though the FBI's argument contains no such limiting principle—leaves 1,037 dockets. Supp. Match Decl. Ex. 1. And generously assuming one hour per case, that amounts to 1,037 hours. Surely reasonable diligence does not require a party's counsel to spend over a thousand hours on one aspect of summary judgment conducting a sweeping search that in many cases will be fruitless.

Consider also the consequences to taxpayers. Suppose undersigned counsel had in fact conducted the research the FBI would require, and the Court ultimately ordered the FBI to conduct a new search, justifying attorneys' fees for Cato. Suppose also that the FBI paid rates according to the Fitzpatrick Matrix, which courts have awarded in FOIA cases and which "is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees", including the "Freedom of Information Act."[2] *See, e.g.*, *Naumes v. Dep't of the Army*, No. 21-cv-1670, 2023 WL 4350786, at *6 (D.D.C. July 5, 2023) (Boasberg, C.J.); *Vollmann v. DOJ*, No. 12-cv-0939, 2022 WL 1124814, *7 (D.D.C. Apr. 14, 2022). As a 2017 law school graduate, undersigned counsel's rate is $568/hour and thus on the lower end.[3] Still, that would amount to nearly $600,000 in attorneys' fees not for this whole case, not even for summary judgment, but merely for background fact research—that plus thousands more dollars in PACER

---

[2] *See* The Fitzpatrick Matrix, *Department of Justice*, 2 (2023), https://www.justice.gov/usao-dc/page/file/1504361/download.
[3] *See id*. at 1.

costs to search the dockets and download potentially relevant filings.[4] And the agency could not reasonably object to those fees and costs. After all, the FBI could not plausibly argue that Cato's counsel should not have done what it says "reasonable diligence" requires. So whenever a requester defeats the FBI on summary judgment, is entitled to fees, and does what the FBI says reasonable diligence requires, the FBI, and thus the taxpayers, will owe well over half a million dollars. That makes no sense.

Fortunately, there is a more sensible approach than the FBI's "read everything on PACER" principle: try to define a reasonable search that would have located the evidence. Cases have done just that. Here are two. In *O'Bryan v. Consol Energy, Inc.*, No. CIV.A. 08-11, 2010 WL 4053533 (E.D. Ky. Oct. 14, 2010), aff'd, 477 F. App'x 306 (6th Cir. 2012), a party belatedly discovered evidence to discredit the doctor who had reviewed his medical file as part of a disability benefits claim. The court held that he could have conducted a specific Westlaw search, which the court defined, and read the "37 results" of that search, several of which—and one in particular—"noted that [the doctor's] independence is questionable." *Id.* at *2. Having located the cases through Westlaw, the party could have reviewed the PACER filings in those cases. *See id.*

Contrast *O'Bryan* with *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 08-cv-335, 2010 WL 4314271 (S.D. Cal. Oct. 26, 2010). There, a party belatedly discovered a publication that was available on the Internet and argued it was newly discovered evidence. The opposing party resisted, claiming that it was able to locate the document on (as the court described it) "the page containing results 91-100" of one search engine, "using search terms contained in the title of the publication rather than terms that were relevant and in dispute in this case." *Id.* at *2.

[4] Those costs currently sit at $0.10 per page, up to $3.00 per downloaded document, with no maximum cost for search result pages. *See* PACER Pricing: How Fees Work, https://pacer.uscourts.gov/pacer-pricing-how-fees-work.

The same search was repeated on Google and the publication was not returned in the first 100 results. *See id*. The court held that, even though the publication was on the Internet and thus theoretically could have been found, reasonable diligence did not require the party to discover it. *See id*. at *2-*3.[5]

A common principle unites these cases: a party exercises reasonable diligence if it conducts reasonable searches for publicly available evidence, even if it ultimately does not locate that evidence. And Cato did just that. Indeed, it did exactly what *O'Bryan* prescribed: start with Westlaw and move to PACER if any reasonable hits arise. But unlike *O'Bryan*, there were no reasonable hits until the D.C. Circuit's *Watkins* decision this past August, which led Cato to PACER. And like *Presidio*, there was no reasonable way to discover the Hardy Declaration before the D.C. Circuit's *Watkins* decision even though it was theoretically available to the public.

The FBI does not even try to explain how Cato reasonably could have discovered the Hardy Declaration. It says only that Cato should have known about it because it was "published on this Court's docket." D. MRJ Opp. at 6. It relies primarily on *Gray*, going so far as to argue that *Gray* holds Cato's argument "frivolous." *Id*. But the seriousness of the FBI's accusation is matched only by how seriously it butchers *Gray*. *Gray* did not involve a document published on a "Court's docket." It instead involved "property records." *Gray v. Staley*, 320 F.R.D. 324, 325 (D.D.C. 2017), aff'd, 707 F. App'x 2 (D.C. Cir. 2017). And the underlying merits decision, which the FBI does not cite, reveals that the records the plaintiff failed to find were ***of a property he claimed to own***, which he was suing ***the defendants*** for unlawfully profiting from. *See Gray v. Staley*, 310

---

[5] Though the FBI confines its argument to court dockets, there is no principled basis to do so, as court dockets are not a unique repository of factual information. In fact, since documents on PACER are not text-searchable, it is probably more feasible to find documents through search engines.

F.R.D. 32, 34, 39 (D.D.C. 2015). What the court found "frivolous" was not that some public records can be newly discovered under Rule 60(b)(2). It was the plaintiff's argument that he could not reasonably have located public records of his own property that was at the heart of the litigation. *See Gray*, 320 F.R.D. at 325 (noting that the plaintiff "did not explain why he failed to present the evidence earlier") (cleaned up). Nothing remotely comparable exists here.

The holdings of the FBI's other cases (notwithstanding the quotations the FBI selectively plucks from them) also do not support the sweeping proposition it cites them for. First, the FBI cites the Second Circuit's decision in *Sokol* summarily affirming, without discussing the facts, a decision holding that a party should have been aware of a publicly filed order of restitution. *In re Sokol*, 108 F.3d 1370 (2d Cir. 1997). But the underlying district court decision, which the FBI again fails to cite, reveals that the order of restitution was filed in the party's own case and the party had received notice of it. *See State of New York v. Sokol*, No. 94 CIV. 7392, 1996 WL 428381, at *3 (S.D.N.Y. July 31, 1996). Second, *Gleason* held that a party failed to exercise reasonable diligence in locating PACER records from a case it first learned about in a bankruptcy judge's order. *See Gleason v. Jansen*, 888 F.3d 847, 853 (7th Cir. 2018). The Seventh Circuit held that the party should have searched PACER ***after*** the bankruptcy judge identified the case and before the bankruptcy judge's final ruling nine months later. *See id*. It said nothing to suggest that the party should have found the PACER filings before the bankruptcy judge's decision. And third, in *Scutieri*, a party did not exercise reasonable diligence when it failed to search the dockets of "two lawsuits" brought by the witness it sought to impeach. *Scutieri v. Paige*, 808 F.2d 785, 793 (11th Cir. 1987). Reasonable diligence might require a party to search two dockets. It does not require one to search over a thousand.

The FBI's fundamental error, then, is in extracting a "read everything on PACER" principle from cases where a reasonable person could have found the evidence without reading everything on PACER. Its principle might well state the standard for the mine run of cases involving a manageable number of dockets needing review, as in *Scutieri*, where an opposing party or a witness has participated in a handful of cases.[6] But nothing in Rule 60(b)(2) or the cases interpreting it mandates an unreasonably onerous research project, like what the FBI says Cato should have done here.

The FBI's argument is divorced from both law and common sense. Cato could not have located the Hardy Declaration through reasonable diligence.

**2. The Hardy Declaration would have changed the Court's decision.**

Cato argued that the Hardy Declaration would have changed the Court's decision because (1) Mr. Hardy averred that "a search of the CRS is not likely to identify all the responsive records" because those records were "not specifically tied to an investigation," and (2) Cato also sought records not specifically tied to an investigation. Match Decl. Ex. 1 ¶ 31. Thus, a reasonable factfinder could infer from the Hardy Declaration that the FBI's CRS search here, too, was not likely to identify all responsive records.

The FBI responds by obfuscating two issues. First, it argues that, supposedly unlike *Watkins*, "[t]his case, however, does not concern a request for 'memorandums, policies, and other communication-related documents not specifically tied to an FBI investigation,' but rather a particular subject, Cato." D. MRJ Opp. at 6-7 (quoting Match Decl. Ex. 1 ¶ 31). That is false. Cato's request sought "any records regarding Cato," limited only by keyword, and specifically

[6] Plus, in most civil litigation parties can and often do discover those cases through interrogatories, and in some cases affirmative disclosures. *See, e.g.*, 26(a)(2)(B)(v) (requiring disclosure for expert witnesses of "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition").

sought "memoranda" and "electronic communications." Seidel Decl. Ex. A, at 2-3, ECF No. 26-2. Further, to the extent the FBI intends "subject" to mean "subject or focus of an investigation," Seidel Decl. ¶ 14, ECF No. 26-1, as it appears to use that term, this argument amounts to the claim that Cato's request in fact only seeks records that ***are*** "specifically tied to an investigation." But nothing in the request for "any records regarding Cato" imposes that limitation. Cato has been perfectly clear throughout this proceeding and on appeal that the request was not limited to investigative records, which the FBI had never disputed.[7]

Second, the FBI argues that the Hardy Declaration does not mean what it says—that the CRS search the FBI performed in *Watkins* would not locate records because they were "not specifically tied to an investigation." Match Decl. Ex. 1, ¶ 31. This is so, the agency claims, because the Hardy Declaration also says that "non-investigative files are located in the CRS." D. MRJ Opp. at 7. But the agency's argument conflates what CRS ***contains*** with how the FBI ***searched*** CRS in particular cases. Here, as in *Watkins*, the FBI conducted only an "index search" of CRS, which both declarants describe in purely investigative terms. *See* Match Decl. Ex. 1, ¶ 25 (Hardy declaration describing the CRS "general indices" as being "arranged in alphabetical order and compris[ing] an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval"); Seidel Decl.

[7] *Compare* Plaintiff's Memorandum in Support of Its Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment, 2 (July 8, 2022), ECF No. 27-1 ("The plain text of the request makes clear that it is not limited to investigative records.") *with* Defendants' Reply in Support of Their Motion for Summary Judgment and Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Summary Judgment (Aug. 12, 2022), ECF No. 30 (not disputing Cato's interpretation of the request). *Compare also* Opening Brief of Plaintiff-Appellant Cato Institute at 3, *Cato Institute v. FBI*, No. 22-5342 (D.C. Cir. Mar. 27, 2023) ("The request was not limited to investigative records or records of investigative significance.") *with* Brief for Appellees, *Cato Institute v. FBI* at 19-22, No. 22-5342 (D.C. Cir. May 26, 2023) (not disputing Cato's interpretation of the request and arguing instead that CRS contains non-investigative records).

¶ 14 (same). There is no evidence, though, that an ***index search*** (as opposed to some other type of search) can locate non-investigative CRS records. That, it seems, is exactly why Mr. Hardy said such a search would not likely locate responsive records. And while the FBI has not explained all its CRS search capabilities, clearly it can search CRS in other ways. *See Shapiro v. DOJ*, 944 F.3d 940, 943 (D.C. Cir. 2019) (distinguishing CRS index search from CRS full-text search). So it seems that the FBI likely locates non-investigative documents by means other than the index search it performed both here and in *Watkins*. Put simply, Mr. Hardy's statement that CRS ***contains*** non-investigative records does not qualify his statement that a CRS index ***search*** would not likely locate them.

Further, it bears re-emphasizing how exactly the Hardy Declaration would have changed the Court's decision. Cato does not argue that it would have led the Court to grant Cato summary judgment. The Court already held that the Seidel declarations suffice to evidence an adequate search, and the Hardy Declaration does not call that into question.[8] Cato argues only that a rational factfinder could read the Hardy Declaration and conclude that the FBI's search was not adequate. And because the Court may not grant summary judgment when there is conflicting evidence, it would have denied both parties' motions. *See Hall & Assocs. v. EPA*, 956 F.3d 621, 630 (D.C. Cir. 2020) (holding that court must deny agency's summary judgment motion "if any reasonable view of the record would permit resolution of a factual dispute in favor of [the requester], and that fact is material to the outcome"). Mr. Seidel's conclusion that the FBI's CRS search was adequate, which the FBI cites throughout its motion, has no bearing on that question. *See* D. MRJ Opp. at 1, 7.

---

[8] Cato does dispute this aspect of the Court's decision for purposes of the pending appeal. *See* MRJ at 2 n.2.

The Hardy Declaration is newly discovered evidence and probably would have changed the Court's decision. Relief from judgment is warranted under Rule 60(b)(2).

**B. Cato is entitled to relief from judgment under Rule 60(b)(3).**

The FBI's response under Rule 60(b)(3) largely mirrors its response under Rule 60(b)(2): that it did not need to turn over Mr. Hardy's declaration because it is irrelevant, and that its failure to do so is immaterial because Cato could have found it on the public docket. *See* D. MRJ Opp. at 8. Those arguments fail for the reasons given above. Further, the FBI also fails to address *Summers v. Howard University*, 374 F.3d 1188 (D.C. Cir. 2004), where the D.C. Circuit held that the plaintiff committed misconduct in failing to supplement its interrogatories, even though the information it failed to add—that it had recently sued the defendant—was plainly available in public court filings. *See id*. at 1191, 1193.

Finally, the FBI does not meaningfully engage with the main reason its omission constitutes (presumably inadvertent) misconduct.[9] Courts do not let FOIA requesters take discovery unless they show in advance that the agency acted in bad faith. *See Bonfilio v. Occupational Safety & Health Admin*., 320 F. Supp. 3d 152, 157 (D.D.C. 2018). They take that approach because they presume the agency will act in good faith. *See Carney v. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994) ("Affidavits submitted by an agency are accorded a presumption of good faith; accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face.") (cleaned up). Courts have not fully fleshed out what good faith requires in this context. But it cannot be compatible with the agency's withholding evidence that would cause it to lose its

[9] The FB's section heading incorrectly describes Cato as arguing that it committed "misrepresentation," a separate ground for relief from judgment that Cato expressly disclaimed. *See* D. MRJ Opp. at 7; MRJ at 10.

summary judgment motion. After all, it would be unfair to requesters—not to mention at odds with the adversary system—to prevent them from discovering a smoking gun unless they can show in advance that the agency possesses it. So courts holding agencies immune from discovery must presume that agencies will act in good faith to affirmatively disclose otherwise-discoverable evidence that would cause them to lose their summary judgment motions.

For the reasons above, the Hardy Declaration constitutes evidences that would have caused the Court to deny the FBI summary judgment. The FBI should have disclosed it but did not. This constitutes (presumably inadvertent) misconduct warranting relief from judgment.

## III. CONCLUSION

The Court should grant Cato relief from judgment, deny summary judgment to the FBI, and order further proceedings to determine the adequacy of the FBI's index search of CRS.

Dated: November 9, 2023

Respectfully submitted,

*/s/ Stephen Stich Match*
Matthew Topic, D.C. Bar No. IL0037
Stephen Stich Match, D.C. Bar No. MA0044
Merrick Wayne, D.C. Bar No. IL0058
LOEVY & LOEVY
311 N. Aberdeen, Third Floor
Chicago, IL 60607
Tel. (520) 488-0486
foia@loevy.com

*Attorneys for Plaintiff*