UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CATO INSTITUTE,**<br><br>**Plaintiff,**<br><br>v.<br><br>**FEDERAL BUREAU OF INVESTIGATION,** *et al.***,**<br><br>**Defendants.** | Civil Action No. 20-3338 (JEB) |

**MEMORANDUM OPINION**

Plaintiff Cato Institute submitted a Freedom of Information Act request seeking Federal Bureau of Investigation records regarding itself. After obtaining fewer documents than it hoped for, Cato sued, challenging in part the adequacy of the FBI's search for such documents. The Court granted summary judgment for the Bureau, concluding based on two FBI declarations that a search of its Central Records System (CRS) was sufficient. Cato then appealed that decision. Now, during the pendency of that appeal, having belatedly located a seemingly contradictory FBI declaration about CRS in another FOIA case, Cato returns to this Court seeking relief from judgment. In an ironic twist, the critical question at this juncture is whether Cato was sufficiently diligent in its search for other FBI declarations so as to render its find "newly discovered" under Federal Rule of Civil Procedure 60(b)(2). Persuaded that this is the case and that such evidence would have changed the outcome at summary judgment, the Court concludes that it would grant the Motion upon the return of jurisdiction from the D.C. Circuit.

1

I.      Background

The Court described the underlying FOIA dispute in its previous Opinion granting summary judgment to the FBI. Cato Inst. v. FBI, 638 F. Supp. 3d 13, 17–18 (D.D.C. 2022). It thus retreads that familiar ground only briefly before moving to the facts underlying the instant Motion.

In this suit, Plaintiff sought to enforce its FOIA request to the FBI for "any records regarding the Cato Institute." ECF No. 26-4 (Def. SMF), ¶ 1. Despite Cato's request that it search certain field offices and databases, see id., the Bureau determined that its Central Records System was the system "where all records responsive to Plaintiff's request would reasonably be found." ECF No. 30-1 (Second Declaration of Michael G. Seidel), ¶ 5. According to FBI Declarant Michael G. Seidel, Section Chief of the Bureau's Record/Information Dissemination Section, the CRS database "spans the entire FBI organization and encompasses the records of FBIHQ, FBI field offices, and FBI legal attaché offices ('legats') worldwide." ECF No. 26-1 (First Declaration of Michael G. Seidel), ¶ 12. Specifically, Seidel attested, it houses "information about individuals, organizations, and other subjects of investigative interest for future retrieval." Id., ¶ 29. After searching CRS, the FBI produced 78 responsive pages to Cato and withheld another 88. See ECF No. 26-2 (Exhibits to Def. MSJ) at 15–17 (Exemption Index).

Following unsuccessful attempts to resolve the case, the parties cross-moved for summary judgment. See ECF Nos. 25 (Joint Status Report), 26 (FBI MSJ), 27 (Cato MSJ). Cato argued in relevant part that the FBI was required to search beyond CRS, which it believed would not return all relevant records because some might not have been properly indexed there. Cato Inst., 638 F. Supp. 3d at 21. The FBI's two Seidel Declarations nonetheless convinced the Court that its CRS search was adequate. Id. at 20–21. Noting that "the agency began with the database

most likely to contain the information requested, see 2d Seidel Decl., ¶ 5, and then, upon the discovery of leads that pointed to records outside of CRS, searched those as well," the Court ruled that the Bureau had "met its burden to follow all leads and clearly explain its decisions about the scope of its final search." Id. Cato appealed that decision, and the case is now pending in front of the D.C. Circuit. See ECF No. 36 (Notice of Appeal).

In the process of appealing, Plaintiff came across evidence it had not been aware of during summary-judgment briefing. Its discovery was prompted by the D.C. Circuit's opinion in Watkins Law & Advocacy, PLLC v. DOJ, 78 F.4th 436 (D.C. Cir. 2023), where one of the issues was whether a CRS search would uncover "documents not specifically tied to an FBI investigation." Id. at 443. In that case, Seidel's predecessor, David M. Hardy, declared that a search of CRS — in his words, "an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files" — was "not likely to identify all the responsive records" because the request at issue included "memorandums, policies, and other communication-related documents not specifically tied to an FBI investigation." ECF No. 40 (Mot. for Relief), Exh. 1 (David M. Hardy Decl.), ¶¶ 23, 31. Although the Hardy Declaration had been filed in the underlying Watkins district-court litigation in 2018 in front of Judge Amy Berman Jackson, years before this Court's 2022 summary-judgment decision in the present case, Watkins Law & Advoc., PLLC v. U.S. Dep't of Veterans Affs., No. 17-1974, ECF No. 20-5 (D.D.C. Dec. 10, 2018), Cato was unaware of it at the time because the district-court decision in Watkins did not reference Hardy's statements or even CRS. Watkins, 412 F. Supp. 3d 98 (D.D.C. 2019); Mot. at 5. With the Hardy Declaration now in hand, and believing it stands in tension with the Seidel Declarations, Cato asks the Court to revisit its summary-judgment ruling.

3

## II.     Legal Standard

Federal Rule of Civil Procedure 60(b) governs the vacatur of judgments.  As relevant here, it permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," and "(3) fraud . . . , misrepresentation, or misconduct by an opposing party."

Courts, although not the D.C. Circuit itself, have applied a four-factor test to determine if Rule 60(b)(2) is satisfied:

> The moving party must demonstrate that: (1) the newly discovered evidence is of facts that existed at the time of trial or merits proceeding; (2) the party seeking relief was justifiably ignorant of the evidence despite due diligence; (3) the evidence is admissible and is of such importance that it probably would have changed the outcome; and (4) the evidence is not merely cumulative or impeaching.

Jordan v. DOL, 331 F.R.D. 444, 450 (D.D.C. 2019) (cleaned up); see also 11 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 2859 (3d ed.) (2023 update) (collecting cases employing standard).  To obtain relief under Rule 60(b)(3), conversely, a movant must demonstrate that the "fraud prevented him or her from fully and fairly presenting his or her case, and that the fraud is attributable to the party or, at least, to counsel."  Green v. Am. Fed. of Labor & Congress of Indus. Orgs., 811 F. Supp. 2d 250, 253 (D.D.C. 2011) (citation and internal quotation marks omitted).

In this case, an appeal has been filed, which "divests the district court of control over those aspects of the case involved in the appeal."  United States v. DeFries, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)).  "[A]lthough a district court does not have jurisdiction to grant a Rule 60(b) motion while the

4

appeal is pending, it does have authority to deny such a motion while the appeal is pending." LaRouche v. U.S. Dep't of Treasury, 112 F. Supp. 2d 48, 52 (D.D.C. 2000).  In addition, a district court may "indicate[] that it will grant relief," at which point "the appellant may move the appellate court for a remand in order that relief may be granted."  Hoai v. Vo, 935 F.2d 308, 312 (D.C. Cir. 1991).

### III.     Analysis

Of the factors guiding a Rule 60(b)(2) analysis, the FBI wisely contests only two: (1) whether the publicly available Hardy Declaration can be considered "newly discovered" evidence about which Cato was reasonably unaware and (2) whether that evidence would have changed the outcome at summary judgment.  The Court will address those disputed factors in turn.  As Cato's Rule 60(b)(2) theory prevails, the Court does not go on to consider its thornier Rule 60(b)(3) argument.

#### A.     Due Diligence

Start with whether Cato should have found the Hardy Declaration during summary-judgment proceedings.  The FBI synthesizes from the caselaw the following principle: "Rule 60(b)(2) motions based on publicly available evidence," including documents on court dockets, are nonstarters.  See ECF No. 41 (Gov't Resp.) at 6.  Because the Hardy Declaration was available on PACER when the parties briefed summary judgment, the FBI asserts that it cannot count as "newly discovered" evidence about which Cato was justifiably ignorant.  Id. at 5–6.  This rule, Cato retorts, would impose an obligation on parties to read every document that exists on PACER — or at least every document in the more than 1,000 FOIA cases against the FBI on PACER.  See ECF No. 42 (Pl. Reply) at 3–4.  Plaintiff submits that due diligence demands far less — namely, a thorough review of court decisions to determine which cases might have

relevant documents on the docket, followed by a PACER search in just those cases. Id. at 6. Cato represents that this is the method it used, id., and the Court has no reason to question that claim.

Courts do not speak with one voice on whether Rule 60(b)(2) motions must be dismissed when premised on publicly available information. Some appear to consider such motions categorically unavailing irrespective of whether the movant exercised due diligence. See, e.g., Scutieri v. Paige, 808 F.2d 785, 794 (11th Cir. 1987) ("Evidence that is contained in the public records at the time of trial cannot be considered newly discovered evidence."); Int'l Ctr. for Tech. Assessment v. Leavitt, 468 F. Supp. 2d 200, 207 (D.D.C. 2007) (same); Legion Constr., Inc. v. Gibson, 310 F.R.D. 1, 3 (D.D.C. 2015) (same); Peter E. Scapiro, P.A. v. Wells Fargo Bank, N.A., 2019 WL 8164772, at *2 (S.D. Fla. Oct. 7, 2019) (treating public availability as determinative). These courts apparently consider litigants to be constructively on notice of documents accessible by the public such that those documents cannot qualify as "newly discovered." See Strickland v. Thelman, 665 So. 2d 284, 287 (Fla. Ct. App. 1995) (relying on Scutieri and noting that parties "may be 'charged' with constructive notice" of public court document, though they lacked actual notice).

Other courts take a slightly less draconian position, viewing the public availability of information as an often conclusive indication that the movant could have discovered the information with due diligence, but leaving room for other factors to sway the outcome. See, e.g., Music Rsch., Inc. v. Vanguard Recording Soc., Inc., 547 F.2d 192, 196 (2d Cir. 1976) (concluding that "record publicly released . . . three months before trial began" was "hardly the type of evidence which with due diligence the appellants could not have discovered"); Gray v. Staley, 320 F.R.D. 324, 325 (D.D.C. 2017) (suggesting that short of explanation for why plaintiff

6

was unable to obtain publicly available property records, Rule 60(b)(2) motion failed); Presidio Components, Inc. v. Am. Tech. Ceramics Corp., 2010 WL 4314271, at *2 (S.D. Cal. Oct. 26, 2010) (finding that publication was not "readily available to the public such that [movant] could have discovered it upon a diligent search of the internet"); Gleason v. Jansen, 888 F.3d 847, 853 (7th Cir. 2018) (rejecting due-diligence argument concerning public information not because irrelevant, but because movant was made aware of docket in question by prior court order); O'Bryan v. Consol Energy, Inc., 2010 WL 4053533, at *1–2 (E.D. Ky. Oct. 14, 2010) (rejecting motion based on newly discovered information about expert witness because it was contained in "decisions [that] were publicly available and easily discovered by an online search") (emphasis added); cf. United States v. Stone, 613 F. Supp. 3d 1, 8 (D.D.C. 2020) (social-media posts not newly discovered under analogous Federal Rule of Criminal Procedure because "exercise of due diligence" would have revealed them, as they were "a few clicks of a mouse away").

      The D.C. Circuit has unfortunately not provided any guidance in navigating this conceptual confusion. See Duarte v. Nolan, 2017 WL 7736939, at *1 & n.1 (D.C. Cir. Apr. 18, 2017) (taking "no position" on whether "public records" constitute newly discovered evidence within meaning of Rule 60(b)(2)). The Court, thus left to its own devices, concludes that the latter of the approaches detailed above represents the wiser. It realizes that its ruling diverges from others in this district, but many of those did not engage in a detailed analysis of the issue.

      In any event, the public availability of documents proffered in support of a Rule 60(b)(2) motion is best considered a factor in the due-diligence analysis, not an absolute bar to relief. A rule charging litigants with knowledge of every public document stowed away in a long-forgotten file cabinet or available only in extensive databases, some of which may be difficult and costly to navigate, sets expectations too high. Indeed, the Rule asks only "reasonable

diligence" of litigants' research; it creates no stricter standard for any particular category of information, including publicly accessible information. See Fed. R. Civ. Pro. 60(b)(2) (permitting relief based on "newly discovered evidence that, with reasonable diligence, could not have been discovered" earlier). The Court thus moves on to a fuller due-diligence analysis rather than relying on a categorical approach.

Cato has shown that ordinary diligence here would not have turned up the Hardy Declaration. Of course, that Declaration was not buried in the undigitized files of some far-flung archive; it was posted for all to see on an electronic court docket. Still, the Court is satisfied that due diligence did not call for an impractical docket-by-docket search of all thousand-plus FBI FOIA cases for evidence like the Hardy Declaration, nor did it call for a review of the Watkins docket in particular. See Presidio, 2010 WL 4314271, at *2 (finding that movant exercised due diligence because newly discovered document not listed in first 100 Google-search results and therefore not "readily available" to public). PACER's lack of a text-based search for keywords or the like, moreover, made a more targeted approach impossible.

As for Watkins, the district court there did not explicitly reference CRS or otherwise delve into the specifics of the FBI's search in its summary-judgment decision. See Watkins, 412 F. Supp. 3d at 117–18 (mentioning only FBI's search of "certain databases" in concluding adequate steps taken). Cato thus had no reason to think anything on that docket would be helpful to its argument concerning the sufficiency of a CRS search. Cf. Gleason, 888 F.3d at 853 (movant should have discovered new evidence earlier because case in question was cited in prior court order). In sum, despite its presence on a publicly accessible court docket, the Hardy Declaration was not the kind of evidence that a reasonably diligent search would have revealed.

B.   Changed Outcome

Next up is whether the Hardy Declaration is the game-changing document Cato claims. As the Court noted in its original decision, to satisfy its burden at summary judgment, an agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Cato Inst., 638 F. Supp. 3d at 19 (quoting Campbell v. U.S. Dep't of Just., 164 F.3d 20, 27 (D.C. Cir. 1998)). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Id. (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)).

The Hardy Declaration introduces serious doubt about the adequacy of the Bureau's search in this case. In its prior decision, the Court relied heavily on Seidel's complementary representations that: (1) "all records responsive to Plaintiff's request would reasonably be found" in the CRS database, see 2d Seidel Decl., ¶ 5 (emphasis added), and (2) "searches of any other locations would be unduly burdensome in nature, duplicative, and unlikely to yield results not found via the CRS index search." 1st Seidel Decl., ¶ 33; see Cato Inst., 638 F. Supp. 3d at 20. The Hardy Declaration, however, illuminates a key deficiency of CRS searches, thus calling those blanket assertions into question. It states that "a search of the CRS is not likely to identify all the responsive records," including "memorandums, policies, and other communication-related documents not specifically tied to an FBI investigation." Hardy Decl., ¶ 31 (emphasis added). That limitation raises significant questions about whether a CRS search would have located "any records regarding the Cato Institute," as requested, particularly because Cato explicitly asked for responsive "memoranda." ECF No. 26-2 (Exhibits to 1st Seidel Decl.) at 2–3 (FOIA Request) (emphasis added). Because a FOIA defendant must "aver[ ] that all files likely to contain

responsive materials (if such records exist) were searched" to obtain summary judgment, Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990), Hardy's statement implying the contrary likely would have prevented a grant of summary judgment in the FBI's favor had it been presented to the Court.

The agency's contentions to the contrary do not persuade. It first tries its hand at explaining why the Hardy Declaration has no bearing on the kind of request at issue here. The request in Watkins involved "memorandums, policies, and other communication-related documents" on specific topics. See Hardy Decl., ¶ 31; id., ¶ 5. That request was vastly different from Plaintiff's, the agency says, which focused on a "particular subject" — namely, Cato itself. See Gov't Resp. at 6–7. The FBI's characterization is difficult to square with the breadth of Cato's request, which, to reiterate, swept in "any records" regarding itself and specifically sought "memoranda." FOIA Request at 2–3. In any event, the FBI's proposed dichotomy between subject-specific requests and those seeking documents untied to investigations of specific subjects seems to be a false one: Cato requested all FBI documents naming it, not just those linked to investigative work.

The FBI also accuses Cato of misreading the Hardy Declaration to mean that CRS includes only investigative documents. Defendant cites Hardy's description of CRS as containing "records consisting of applicant, . . . intelligence, personnel, administrative, and general files" as proof to the contrary. See Gov't Resp. at 7 (quoting Hardy Decl., ¶ 23). As Cato explains, however, it is not the contents of CRS that it is concerned with, but rather whether an index search of CRS would uncover non-investigative documents such as policies, memoranda, and communications unrelated to a specific FBI investigation, a category of documents that fall within the scope of its request. See Pl. Reply at 9–10. On that question, the

Hardy Declaration is clear that a CRS search falls short. See Hardy Decl., ¶ 31. Both of the agency's arguments therefore come to naught. Because the Hardy Declaration intimates that a portion of Cato's request could not be fulfilled by looking to CRS alone and the FBI never asserts any change in the scope of CRS since that Declaration, it would have altered the outcome at summary judgment.

## IV.  Conclusion

The Court will, accordingly, issue a Notice indicating that it would grant Cato's Motion for Relief from Judgment upon the return of jurisdiction from the D.C. Circuit.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  January 9, 2024