**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CATO INSTITUTE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FEDERAL BUREAU OF INVESTIGATION, *et al.*,**<br><br>**Defendants.** | **Civil Action No. 20-3338 (JEB)** |

**MEMORANDUM OPINION**

In this Freedom of Information Act suit, Plaintiff Cato Institute sought documents about itself from the Federal Bureau of Investigation. After the Court initially granted summary judgment for the Bureau, Cato found a declaration in another case that called into question the adequacy of the agency's search and moved for relief from judgment, which the Court granted. The FBI then conducted a supplemental search and located more responsive documents, many of which it withheld under various FOIA exemptions. In competing renewed Motions for Summary Judgment, the parties dispute whether the supplemental search was adequate and whether the Bureau's withholdings were proper. The Court holds that the FBI adequately searched for responsive documents, properly relied on Exemptions 3 and — in part — 7(E), reasonably segregated information, and identified foreseeable harm. It also holds, conversely, that the FBI did not justify certain withholdings under Exemption 7(E). It will therefore grant in part and deny in part both Motions.

## I. Background

In December 2019, a policy analyst at Cato submitted a FOIA request to the FBI for "any records regarding the Cato Institute." ECF No. 66-2 (Def. SMF), ¶ 1. That request asked that the FBI search for several variations on the term "Cato," and it also specified search terms to be used in a separate hunt for responsive documents, including "Cato" in combination with other terms like "Wikileaks," "Immigration," and "Encryption." Id. Cato also asked the FBI to search specific locations — namely, field offices and "the FBI Guardian database or any related or successor systems." Id. The Bureau determined, however, that "all records responsive to Plaintiff's request would reasonably be found" in its Central Records System (CRS). See ECF No. 30-1 (Second Declaration of Michael G. Seidel), ¶ 5. Following its search of CRS, the FBI produced 78 responsive pages to Cato and withheld another 88. See ECF No. 26-2 (Exhibits to Def. MSJ) at 15–17 (Exemption Index). Believing that the search should have uncovered more documents, Cato sued the Bureau and the Department of Justice.

After an initial round of briefing, the Court granted summary judgment for Defendants. See Cato Inst. v. FBI, 638 F. Supp. 3d 13, 23 (D.D.C. 2022). It concluded that the FBI had met its burden to show that the search was adequate, id. at 19–21, and had properly withheld information under FOIA Exemptions 6 and 7(C). Id. at 21–23. In the process of appealing that decision, Cato discovered in another docket an FBI declaration that seemingly contradicted the agency's assertion that a CRS search would in fact identify all responsive records. See Cato Inst. v. FBI, 2024 WL 95198, at *2 (D.D.C. Jan. 9, 2024). Agreeing that the declaration "likely would have prevented a grant of summary judgment in the FBI's favor had it been presented," the Court granted Plaintiff relief from judgment. Id. at *4; see Fed. R. Civ. Proc. 60(b).

Returning to the drawing board and electing to use a broader search term, the FBI then conducted supplemental searches in various locations, locating 959 pages of potentially responsive records. See ECF Nos. 66-3 (Decl. of Amie Marie Napier), ¶ 7; 70-2 (Decl. of Christina L. Driver), ¶ 26. The FBI released 372 pages in full and 76 pages in part, withheld 243 pages as duplicates, and withheld 268 pages in full, invoking FOIA Exemptions 1, 3, 5, 6, 7(A), 7(C), and 7(E). See Napier Decl., ¶ 4. Plaintiff challenges only the withholdings under Exemptions 3, 7(A), and 7(E).

The parties now cross-move for summary judgment, as Cato still disputes the adequacy of the FBI's search and the propriety of some of its withholdings. Because some of the Bureau's explanations for withholding certain documents were difficult to evaluate in the abstract, the Court ordered it to produce *in camera* redacted and unredacted copies of the disputed materials withheld in whole or in part under Exemptions 3, 7(A) or 7(E). See Minute Order of Aug. 27, 2026. Having reviewed those records, the Court now considers the parties' legal arguments.

## II. Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). An issue of material fact is one that would change the outcome of the litigation, and a dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When a motion for summary judgment is under consideration, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S. at 255; see also Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*). On a motion for summary judgment, the court must "eschew making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007). When both parties move for summary judgment, the court shifts the beneficiary of the factual inferences. Once it "determines that one party is not entitled to summary judgment, it changes tack on the cross motion and gives the unsuccessful movant all of the favorable factual inferences that it has just given to the movant's opponent." Clark v. Vilsack, 2021 WL 2156500, at *2 (D.D.C. May 27, 2021) (quotation marks and citation omitted).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Brayton v. Off. of the U.S. Trade Representative, 641 F.3d 521, 527 (D.C. Cir. 2011); Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). In a FOIA case, the agency bears the ultimate burden of proof to demonstrate the adequacy of its search and that it properly withheld any records. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, n.3 (1989); Defs. of Wildlife, 623 F. Supp. at 91. The court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d

857, 862 (D.C. Cir. 2009) (citation omitted). Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks and citation omitted).

## III. Analysis

In the course of their briefing, the parties have narrowed the issues in this dispute to four: (1) the adequacy of the FBI's search for responsive records, particularly whether it was obligated to further expand its search to include Sentinel Gold and FBI SharePoint sites, two locations that Cato insists might contain relevant records; (2) the propriety of the Bureau's withholding of certain records in whole or in part pursuant to Exemptions 3, 7(A), and 7(E); (3) whether the FBI has shown that foreseeable harm would result from disclosure of materials withheld under Exemptions 7(A) and 7(E); and (4) whether there exists any further non-exempt responsive information that can be reasonably segregated and released. The Court addresses them in turn.

### A. Search

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

The adequacy of an agency's search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Id. To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable

detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). The affidavits or declarations should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials (if such records exist) were searched." Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). Absent contrary evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA. See Perry, 684 F.2d at 127. "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt, 897 F.2d at 542.

To demonstrate the adequacy of its search here, the FBI has submitted declarations from Amie Marie Napier, Section Chief of the FBI's Record/Information Dissemination Section, Information Management Division, and Christina L. Driver, Assistant Section Chief. The Napier Declaration asserts that "the FBI has searched all locations and files reasonably likely to contain responsive records, and there is no basis for the FBI to conclude that a search elsewhere would reasonably be likely to locate responsive records." Napier Decl., ¶ 24; see also Driver Decl., ¶ 27 ("The FBI considers both the original search and subsequent targeted search adequate for finding all potentially responsive records to Plaintiff's FOIA request."). The Napier Declaration also details the search terms used, the types of searches performed, and the location of the searches. See Napier Decl., ¶¶ 7–28; see also Driver Decl., ¶¶ 26–27 (same).

Notwithstanding the FBI's search of numerous databases beyond CRS and its assertion that it searched all locations reasonably likely to contain responsive records, Plaintiff insists that Defendants "have not expanded [their search] far enough." ECF No. 67-1 (Pl. Cross MSJ) at 16. First, Cato presses that they should have searched "Sentinel Gold," a repository for "Top Secret" material. Id. Because the FBI's supplemental searches returned classified records designated "Secret," Cato contends that another classified system "could very well contain more such

records." Id. Second, Plaintiff argues that Defendants should have searched "FBI SharePoint sites" operated by FBI headquarters divisions and field offices. Id. at 17.

An agency must continually "revise its assessment of what [constitutes a] 'reasonable' [search] in a particular case to account for leads that emerge during its inquiry." Campbell v. U.S. Dep't of Just., 164 F.3d 20, 28 (D.C. Cir. 1998). But Cato's "[m]ere speculation" that the Sentinel Gold and SharePoint databases might contain additional responsive information "does not undermine the finding that the agency conducted a reasonable search for them." SafeCard Servs., Inc. v. Secs. & Exch. Comm'n, 926 F.2d 1197, 1201 (D.C. Cir. 1991). Rather, "a search is generally adequate where the agency has sufficiently explained . . . why the specified record systems are not reasonably likely to contain responsive records." Mobley v. CIA, 806 F.3d 568, 582 (D.C. Cir. 2015). The FBI did exactly that here. As the Driver Declaration explains, the Bureau searched Sentinel, a database that contains placeholders indicating that a related record is stored in Sentinel Gold. That search of Sentinel produced "no indication that any records responsive under the FOIA to Plaintiff's request exist within [Sentinel] Gold." Driver Decl., ¶ 28. The declaration also explains that SharePoint sites "do not contain investigatory records," and that no information contained on the SharePoint sites would be "relevant to Plaintiff's FOIA request." Id., ¶ 30. As the FBI has met its burden to pursue all leads and clearly explain the scope of its search, the Court finds summary judgment for Defendants proper on this question.

B. Exemptions

Nine categories of information are exempt from FOIA's broad rules of disclosure. See 5 U.S.C. § 552(b)(1)-(9). Those exemptions are to be narrowly construed. See Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976). The Government must furnish "detailed and specific information demonstrating 'that material withheld is logically within the domain of the

exemption claimed.'" Campbell, 164 F.3d at 30 (quoting King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987)). As this Circuit has emphasized, the Government cannot justify its withholdings on the basis of summary statements that merely reiterate legal standards or offer "far-ranging category definitions for information." King, 830 F.2d at 221. Against this backdrop, the Court will now separately assess Plaintiff's challenges to Defendants' withholdings.

1. *Exemption 3*

The FBI has withheld 59 pages under Exemption 3. That exemption allows agencies to withhold records "specifically exempted from disclosure by statute," provided that such statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). In evaluating documents withheld pursuant to Exemption 3, the Court need not examine their "detailed factual contents." Morley v. CIA, 508 F.3d 1108, 1126 (D.C. Cir. 2007). Rather, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." Id. (quotation marks and citation omitted); see also Telematch, Inc. v. U.S. Dep't of Agric., 45 F.4th 343, 348 (D.C. Cir. 2022) ("To withhold records under Exemption 3, an agency must show that 'the statute is one of exemption' and that 'the withheld material falls within the statute.'") (quoting Corley v. Dep't of Just., 998 F.3d 981, 985 (D.C. Cir. 2021))

The relevant statutes that Defendants invoke here for different documents are Federal Rule of Criminal Procedure 6(e) and the National Security Act of 1947. Because Plaintiff does not challenge the FBI's withholding pursuant to Rule 6(e), see Pl. Cross MSJ at 4, the Court considers only the propriety of its withholding pursuant to the NSA. That statute requires the

Director of National Intelligence and the broader intelligence community to "protect intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 3024(h)(1); see § 3024(h)(2), (4). As the D.C. Circuit has recognized, the NSA "qualifies as an exemption statute under exemption 3" because it "refers to particular types of matters to be withheld" — namely, "intelligence sources and methods." ACLU v. Dep't of Def., 628 F.3d 612, 619 (D.C. Cir. 2011). The only remaining question regarding this exemption, then, is whether the FBI has shown that the documents withheld contain "intelligence sources and methods" within the meaning of the Act. See Fitzgibbon v. CIA, 911 F.2d 755, 761 (D.C. Cir. 1990).

The agency bears the burden to justify its withholdings under Exemption 3. See Bigwood v. USAID, 484 F. Supp. 2d 68, 74 (D.D.C. 2007). Plaintiff accuses the FBI of offering only a "conclusory assertion that they believe the statutory requirements are met." Pl. Cross MSJ at 4; see also id. at 4–5 (complaining that "the Vaughn index describes the withheld records in impossibly vague terms").

Cato is mistaken. Defendants offer concrete and specific assertions that justify withholding. As they explain in their supplemental declaration, the FBI withheld spreadsheets that document the agency's "vetting process" — *i.e.*, the process by which agency staff examine potentially responsive investigative records to determine what can be released to the requester. See Driver Decl., ¶¶ 10 n.6, 13. Because those responsive spreadsheets contain file numbers that are assigned to "specific intelligence activities," the FBI avers that their "disclosure could reveal intelligence sources and methods, including targets of foreign intelligence or espionage investigations, human intelligence sources, detailed intelligence activities, and file numbers." Id., ¶ 19. It warns that "[r]elease of intelligence file numbers would lead to exposure of the particular intelligence activity and method at issue and its nexus to a specific FBI intelligence

program or sub-program," which in turn would "enable foreign adversaries to anticipate and avoid detection." Id., ¶¶ 19, 21.

The Court, after its *in camera* review, is persuaded that disclosure of the vetting spreadsheets could compromise intelligence operations. "[I]t is the responsibility of the [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process." CIA v. Sims, 471 U.S. 159, 180 (1985). Indeed, in the intelligence context, "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself." Id. at 178 (internal quotation marks omitted). Taking into account the "special deference owed to agency affidavits on national security matters," Schoenman v. FBI, 841 F. Supp. 2d 69, 84 (D.D.C. 2012); see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 927 (D.C. Cir. 2003), the Court concludes that Exemption 3 protects the documents that the FBI has withheld.

The Court pauses to note that all documents withheld pursuant to Exemption 7(A) are also covered by Exemption 3. That overlap makes the Court's task "substantially less complicated." See Ullah v. CIA, 435 F. Supp. 3d 177, 183 (D.D.C. 2020). Because the Court has already determined that the FBI's withholdings pursuant to Exemption 3 are proper, it need not address Exemption 7(A). See Ctr. for Nat'l Sec. Studies, 331 F.3d at 925.

2. *Exemption 7(E)*

For the last tranche, the FBI invoked Exemption 7(E) to withhold 279 pages. Here, too, there is substantial overlap between documents withheld pursuant to Exemptions 3 and 7(E), but not all the documents withheld are covered by the former, so the Court must address this

exemption. Exemption 7(E) authorizes an agency to withhold records that, if released, "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The FBI invokes only Exemption 7(E)'s "techniques and procedures" prong. To prevail under that prong, it must demonstrate that its withholdings meet three requirements: first, that the documents were in fact "compiled for law enforcement purposes" and not for some other reason, see 5 U.S.C. § 552(b)(7); second, that they contain law-enforcement techniques and procedures that are "generally unknown to the public," Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs., 849 F. Supp. 2d 13, 36 (D.D.C. 2012); and third, that disclosure "could reasonably be expected to risk circumvention of the law." Id. (quoting 5 U.S.C. § 552(b)(7)(E)). To facilitate its analysis, the Court will sort the Exemption 7(E) withholdings into four categories: (1) file numbers; (2) database names and search results; (3) the FBI's strategies for vetting investigative records; and (4) the location and identity of specific FBI units.

As to the file numbers, Cato maintains that Defendants fail to demonstrate that disclosure would risk circumvention of the law. Contrary to Plaintiff's contention that the FBI cursorily asserts that all file numbers should be exempt, see Pl. Cross MSJ at 10, Napier's declaration provides ample justification. It avers that the combination of FBI file-classification numbers, office-of-origin codes, and unique investigative-initiative numbers "would allow determined criminals and foreign adversaries to obtain an exceptional understanding of the body of investigative intelligence available to the FBI; and where, who, what and how it is investigating certain detected activities." Napier Decl., ¶ 64; see also Driver Decl., ¶ 21 (warning that release of numbers would "provide criminals with a means of judging where the FBI allocates its limited

investigative resources[ and] how the FBI responds to different investigative circumstances"). District courts in this Circuit have long accepted this type of explanation. See, e.g., Reps. Comm. for Freedom of the Press v. FBI, 548 F. Supp. 3d 185, 200 (D.D.C. 2021), partially reconsidered on other grounds, 754 F. Supp. 3d 56 (D.D.C. 2024); Poitras v. Dep't of Homeland Sec., 303 F. Supp. 3d 136, 159 (D.D.C. 2018). Indeed, Circuit precedent "sets a relatively low bar for the agency to justify withholding" under Exemption 7(E), Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011), requiring only that it "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009)). Given that low bar, the FBI's explanation, and the *in camera* review, the Court determines that Defendants properly invoked Exemption 7(E) to withhold the file numbers.

As to the database information, Plaintiff contests whether those records contain techniques and procedures that are genuinely unknown to the public. Cato first argues that merely revealing non-public database names would not reveal any non-public facts about FBI investigative techniques, and that Exemption 7(E) "does not protect techniques and procedures 'already well known to the public.'" Pl. Cross MSJ at 12 (quoting Founding Church of Scientology of Washington, D. C., Inc. v. NSA, 610 F.2d 824, 832 n.67 (D.C. Cir. 1979)). That contention misses the point. The FBI's use of sensitive, non-public databases to conduct criminal and national-security investigations is itself an investigative technique, see Napier Decl., ¶¶ 65–66, disclosure of which would make the databases "attractive target[s] for compromise" and give "criminals who gain access to FBI systems an idea of where they can go to discover what the FBI knows." Id., ¶ 68; see also Shapiro v. U.S. Dep't of Just., 393 F. Supp.

3d 111, 122 (D.D.C. 2019) (concluding that FBI properly withheld name of database to limit risk of cyberattack).

Cato further posits that the information located through queries of those databases is not an investigative technique or procedure. For support, it cites a Third Circuit case holding that "without more, neither the specifics of a [database] search request — including the identity of the requesting entity, the date of the request, and the nature of the request — nor the details of the search result can be fairly understood as a law enforcement technique or procedure." Viola v. U.S. Dep't of Just., 157 F. 4th 524, 545–46 (3d Cir. 2025). The parties dispute both whether the FBI has offered something "more" and whether the facts of Viola are distinguishable. See ECF Nos. 70 (Def. Opp. and Reply) at 14; 72 (Pl. Reply) at 8–9. The Court need not resolve those questions because it is bound by D.C. Circuit precedent, which has established that "the methods that the FBI uses to search [a] database and what results it considers meaningful . . . can reveal law enforcement techniques and procedures." Shapiro v. U.S. Dep't of Just., 893 F.3d 796, 800 (D.C. Cir. 2018). The Bureau may "withhold records under Exemption 7(E) on the basis that releasing them would provide information on how a database is 'searched, organized and reported.'" Id. (quoting Blackwell, 646 F.3d at 42). Defendants explained here that releasing information located through database queries would reveal "how the FBI uses the databases to support its investigations" and "the scope of FBI collected intelligence on particular subjects," enabling criminals to structure their behavior to evade detection or disruption by the FBI. See Napier Decl., ¶¶ 65–66. Given those explanations and the Court's *in camera* review, the database records fall within Exemption 7(E).

For the third bucket, as a preliminary matter, Defendants' assertion that the documents withheld involve "vetting of investigative records" for FOIA requests, see Napier Decl., ¶ 71,

cannot be squared with the Court's *in camera* review, which shows that the bulk of documents withheld pursuant to this subcategory of Exemption 7(E) are merely compilations of news articles. The FBI briefly acknowledges its withholding of internal public-affairs news briefings, asserting that their disclosure would "reveal where the information was collected and what specific information was deemed relevant to the briefing." Driver Decl., ¶ 24. It entirely fails to explain, however, why those news briefings constitute a law-enforcement technique or how their disclosure would risk circumvention of the law. For those documents, the FBI did not properly invoke Exemption 7(E).

Plaintiff's arguments center on the few remaining records in this category, which pertain to the FBI's vetting of FOIA responses. Cato believes that those records are neither "compiled for law enforcement purposes" nor constitute techniques or procedures for "law enforcement investigations or prosecutions." Pl. Cross MSJ at 13–14. Defendants, in arguing otherwise, stumble out of the gate. They emphasize that "there is little meaningful difference between records compiled for law enforcement purposes and information relating to the search of those records." Def. Opp. and Reply at 16 (quoting Shapiro v. U.S. Dep't of Just., 239 F. Supp. 3d 100, 114 (D.D.C. 2017)). Even where search records were compiled to comply with FOIA rather than for law-enforcement purposes, "to the extent they replicate information that was compiled for law enforcement purposes, that distinction is immaterial." Shapiro, 239 F. Supp. 3d at 113-14 (citing FBI v. Abramson, 456 U.S. 615, 624 (1982)) (stating that it is "reasonably arguable" that Exemption 7 applies to records that "contain[] or essentially reproduce[] all or part of a record that was previously compiled for law enforcement reasons"). True enough. Based on the Court's *in camera* review, however, the handful of FOIA-response-related documents that were withheld under Exemption 7(E) but not under Exemption 3 contain no information compiled for

law-enforcement purposes. Contrary to the FBI's assertion that the relevant material is "derived/compiled from and/or reflect[s] information that would reveal FBI criminal investigation files" and "investigatory documentation," Napier Decl., ¶ 70, the Court finds that the documents still at issue here do not reflect any law-enforcement information. The following records thus fall outside of Exemption 7(E): Vaughn Index numbers (VIs) 425, 447, 469, 491, 513, 535, 557, 579, 601, 623, 645, 667, 689, and 711.

Finally, as to the location and identity of specific FBI units, Plaintiff contends that Defendants have not sufficiently explained how disclosure would risk any circumvention of the law. See Pl. Cross MSJ at 14–15. The Court agrees. The FBI avers that it redacted "the location and identity of [the] FBI unit involved in the investigation of Cato Institute" because disclosure would reveal "the targets" and "the physical areas of interest" of the investigation. See Napier Decl., ¶ 75. "Once identified," the Napier Declaration warns, "the units' areas of expertise would become known and the target of the investigation(s) would be able to discern the investigative strategies deployed by the FBI." Id., ¶ 76. In the abstract, that may well be true. But the Court's *in camera* review confirms that the FBI has already revealed the location and identity of the FBI unit involved in the investigation. The unredacted document shows that it is the Los Angeles Field Office Counterterrorism Division. The FBI, moreover, already revealed that Cato was the target of the investigation, id., ¶ 75, though it tries to argue otherwise in briefing. See Def. Opp. and Reply at 19. The only other document withheld under this rationale offers no additional information. Based on the Court's *in camera* review and Defendants' flimsy explanations about risk of circumvention, Exemption 7(E) does not apply to the following records: VIs 251 and 391.

C. Foreseeable Harm

Even when a record falls within a FOIA exemption, the agency "shall withhold" it only if "the agency reasonably foresees that disclosure would harm an interest protected by [the] exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I). The foreseeable-harm requirement applies to all exemptions, except Exemption 3. See Leopold v. Dep't of Just., 94 F.4th 33, 36–37 (D.C. Cir. 2024). Under that standard, an agency invoking an exemption must "identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials" and "connect [such] harms in a meaningful way to the information withheld." Ctr. for Investigative Reporting v. U.S. Customs & Border Prot., 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (cleaned up); see also Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 369 (D.C. Cir. 2021).

To invoke Exemption 7(E), an agency must show that disclosure of the withheld information would be reasonably expected to risk circumvention of the law. Foreseeable harm, then, is effectively embedded in the test for whether the exemption applies. See Gun Owners of Am., Inc. v. FBI, 2024 WL 195829, at *4 (D.D.C. Jan. 18, 2024) ("[B]ecause the exemption already requires a showing of risk of circumvention of the law, no further foreseeable-harm analysis is necessary."); see also 100 Reporters v. U.S. Dep't of State, 602 F. Supp. 3d 41, 83 (D.D.C. 2022) (agreeing that foreseeable-harm requirement is "similar to (and was not intended to heighten)" Exemption 7(E)'s circumvention-of-law requirement); Hum. Rts. Def. Ctr. v. U.S. Park Police, 126 F.4th 708, 716 (D.C. Cir. 2025) (recognizing that "formally distinct" foreseeable-harm and exemption requirements can "substantively overlap"). The FBI has established that it reasonably foresees that disclosure of the withheld information will enable criminals to evade investigation and prosecution. See Napier Decl., ¶¶ 61–69. That is sufficient.

D. Segregability

The Court ends with segregability. FOIA requires that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." See 5 U.S.C. § 552(b). Generally, an agency must provide "a 'detailed justification' and not just 'conclusory statements' to demonstrate that all reasonably segregable information has been released." Valfells v. CIA, 717 F. Supp. 2d 110, 120 (D.D.C. 2010). The FBI offered two declarations detailing how it "carefully examined" the responsive documents, "released all reasonably segregable non-exempt information" from those documents, and determined after "extensive line-by-line, page-by-page review of the documents at issue" that no further non-exempt information could be released without revealing exempt information. See Napier Decl., ¶ 80; see also Driver Decl., ¶ 31. "Those sworn statements sufficiently establish that 'no portions of the withheld documents may be segregated and released.'" Porup v. CIA, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (quoting Juarez v. Dep't of Just., 518 F.3d 54, 61 (D.C. Cir. 2008)).

In any event, agencies are "entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007). "To rebut this presumption, the requester must offer, at least, evidence that would warrant a belief by a reasonable person that the agency" dropped the ball. Flyers Rts. Educ. Fund, Inc. v. Fed. Aviation Admin., 71 F.4th 1051, 1058 (D.C. Cir. 2023) (cleaned up). Here, Plaintiff argues that the FBI fully withheld 56 pages pursuant to Exemption 3, see Pl. Cross MSJ at 6, when it instead should have disclosed any non-exempt information that those pages contained. The Court, however, has reviewed the pages and concludes that the records almost entirely comprise exempt information, and any non-exempt information is

inextricably intertwined with it. The non-exempt information, therefore, "cannot be reasonably segregated without either compromising the purpose of the FOIA exemptions or offering meaningless words or phrases." Blixseth v. U.S. Immigr. & Customs Enf't, 2020 WL 210732, at *7 (D.D.C. Jan. 14, 2020) (citing Mays v. Drug Enf't Admin., 234 F.3d 1324, 1327 (D.C. Cir. 2000)). The FBI's segregation is appropriate.

## IV. Conclusion

For the reasons above, the Court will grant in part and deny in part both parties' Motions for Summary Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: September 14, 2026